## FIRST NATIONAL BANK & TRUST CO. OF TULSA, Gdn., v. BASSETT.

No. 28440.    Sept. 27, 1938.

Rehearing Denied Nov. 1, 1938.

Everett Petry, for plaintiff in error.

Edward P. Marshall and J. J. D. Cobb, for defendant in error.

CORN, J. This is an appeal from an order and judgment of the district court of Tulsa county, made in the exercise of its appellate jurisdiction, allowing defendant in error's claim for compensation as attorney for a former guardian of an Indian minor. Hereafter the parties will be referred to as "claimant" and "guardian."

In November, 1912, S. B. Nelson was appointed guardian of Millie Naharkey, a Creek minor, who reached majority June 13, 1922. Five days prior to her becoming of age, Nelson, with the approval of the county court, entered into a written contract with claimant, employing him to prosecute whatever suits might be necessary to recover the ward's interest in some valuable land. The contract specified claimant was to receive 50 per cent. of any land or money recovered, if and when the recovery should finally be determined. Claimant filed five actions before Nelson was discharged from his guardianship. Upon becoming of age the ward filed dismissals of the actions instituted by claimant, but claimant secured an order from the court appointing him guardian ad litem, set aside the dismissals and continued, but filed no claim with Nelson before his discharge.

In September, 1922, one Deichman was appointed guardian, and claimant continued to prosecute the claims. Deichman resigned, but claimant presented no claim for his services.

The Title Guaranty & Trust Company was appointed guardian and employed other attorneys, authorizing them to continue prosecution of the suits. County court refused claimant's application that guardian be ordered to continue employing him, and May 15, 1924, claimant entered his withdrawal. In May, 1937, a recovery of some $53,000 was finally had, and the latter attorneys were paid over $11,000. During this litigation the First National Bank & Trust Company had been appointed guardian, and is still acting.

May 27, 1937, claimant filed his petition

in the county court, asking an order directing present guardian to pay him the fair and reasonable value of his services under the contract made with Nelson. The court refused this claim, and claimant appealed to the district court, where judgment of the county court was reversed and the guardian ordered to pay claimant $2,500.

The present guardian seeks reversal of this judgment upon the grounds: (1) County court had no jurisdiction in present guardianship proceedings to hear and determine the claim, hence the district court could not exercise probate jurisdiction on appeal; (2) the judgment of the court is contrary to law; (3) the judgment is not supported by sufficient evidence and is contrary to the evidence; (4) claimant's cause of action was barred by statute of limitation; (5) the court erred in admission of testimony as to the reasonable value of claimant's services.

Particular attention will be directed toward propositions (1) and (4), since these two questions are decisive of the matter now on appeal.

The first argument advanced by the guardian is the claim that the court was without jurisdiction in the present guardianship proceeding to consider this claim, inasmuch as the county court's supervisory authority does not extend to the determination of litigated claims arising out of transactions with the ward or a former guardian antedating the appointment of the guardian against whom the order of allowance is sought.

The contract here was expressly for the ward's benefit, to recover certain valuable land, and was approved by the county court. There can be no question but that contracts made for the benefit of the ward's estate and approved by the proper court are enforceable. The guardian's argument is that Nelson could not have created a future liability upon the ward's estate, and that this contract of employment created no legal liability, but bound Nelson, as guardian, personally.

In support of this argument the guardian cites Jones v. Johnson, 72 Okla. 134, 178 P. 984, holding that guardian's contract is binding upon himself and not the ward's estate; and Morton v. Thomason, 146 Okla 255, 293 P. 1005, holding that guardian cannot, in order to secure funds with which to press a claim for inherited lands of the ward, enter into a contract with a third party whereby the lands recovered shall be impressed with a lien in favor of such third party to secure repayment of such funds.

However, we do not consider the cited cases applicable because of the different situation. Here, by the terms of the contract, the ward's estate was impressed with no liability whatever, unless and until a recovery was had. The contract was exclusively for the benefit of the ward, and any liability against her estate was wholly contingent upon there being a recovery in her favor. Her estate was neither increased nor lessened by the contract, but remained the same at all times until the conclusion of the litigation.

In Bancroft's Probate Practice, vol. 4, sec. 1334, p. 2153, it is said:

"Ordinarily a guardian who employs an attorney on behalf of his ward's estate is regarded as the client, and is primarily obligated to pay the attorney's fees. If the services are necessary and beneficial to the estate and the charge is reasonable and just, the guardian is entitled to credit therefor in his account, or, in a proper case, the attorney may be entitled to recover against the ward, if his employment was ordered or sanctioned by the court. So it has been held that where there was no intention on the part of the attorney to look to the guardian for compensation, nor on the part of the guardian to become personally liable therefor, the ward's estate should be charged with such compensation."

Section 1397 of the same text states further:

"The allowance of attorney's fees is dependent upon the circumstances. Such fees are allowable out of the ward's estate upon the theory that the services were necessary and beneficial to the estate. If the services were necessary, the court should allow just and reasonable compensation."

In the early case of Parnell v. Wadlington, 42 Okla. 363, 139 P. 121, this court committed itself to the rule that a guardian can bind the estate of a minor, with approval of the proper court, when such services are necessary and beneficial to the estate. See, also, Talomase v. Kelly, 98 Okla. 212, 225 P. 156.

Neither do we see any merit in the argument that the contract bound the guardian, Nelson, personally, and not the estate. Obviously he proceeded in a necessary manner and his action was of decided benefit to his ward's estate, even prior to the outcome of the litigation which gave rise to the present controversy. The contract, as made, had the approval of the county court having jurisdiction of the minor and was a valid

contract binding the ward's estate. This being true, argument cannot now be heard that when a claim arose against the ward's estate it was improper to present such claim to the county court for allowance.

The remaining question, then, is whether the claimant's right to recovery was barred by the statute of limitations. The guardian contends claimant's cause of action, if any, accrued not later than May 15, 1924, when claimant entered his withdrawal in the suits he had filed. The argument here is that a cause of action accrues at the time the right to sue for a breach first attaches, hence claimant's right of action was barred by expiration of five years from date of his withdrawal.

Supporting this argument the guardian cites cases from this court and from other jurisdictions. One of the more recent cases cited is Neff v. Willmott, Roberts & Looney. 170 Okla. 460, 41 P.2d 86, cited as authority for the rule contended for, that the running of the statute of limitations begins from the day the wrong sued for is committed. However, we are of the opinion the Neff Case, supra, and the reasoning upon which the opinion is based, is so distinguishable as to make it inapplicable to the case at bar.

In that case Willmott, Roberts, and Looney obtained a contract to represent a client in litigation concerning valuable land. Neff later obtained a contract concerning the same subject matter, whereupon Willmott and the others ceased activity and Neff prosecuted the litigation successfully. More than five years later Willmott and the others sued Neff for tort in interfering with their contract and obtained a judgment against him, on the theory that the statute of limitations did not begin to run until the rights in the original litigation had been determined.

In reversing the judgment of the trial court allowing them to recover this court said:

"For that reason plaintiffs contend that the statute of limitation did not commence to run on their claim against defendant until 1931. However true that might be as to plaintiffs' right to collect on the contract from the clients, a different question is here presented where they seek to proceed against defendant, Neff, for his tort in interfering with their contract with their clients, and inducing the breaking of their contract. This is purely an action in tort for the breach of a duty imposed by law, and the wrongful invasion of plaintiffs' legal rights. There was no contractual relation between plaintiffs and defendant."

From consideration of the case and in view of the statement set out above, it seems clear this court recognizes that a different rule applies as to the time when the statute of limitation begins to run in cases founded upon tort for the invasion of a legal right, and when the action is based upon the enforcement of a contractual obligation.

The guardian's position here is that, at most, all claimant could have recovered would have been on the basis of quantum meruit for services actually performed. Hence, his cause of action accrued at the time he was displaced as attorney for the incompetent ward, and that time being more than five years prior to the time of filing his action, the bar of the statute of limitation has fallen on any claim he might have.

However, we have examined numerous authorities, among them those cited by the plaintiff in error, and have found a wide divergence in both the results of these cases and the reasoning upon which they are based. Among these cases is Martin v. Camp, 219 N. Y. 170, 114 N. E. 46, L. R. A. 1917F, 402, relied upon by the guardian, and which held, in part:

"The statute of limitation begins to run against the claim of an attorney discharged before the completion of the work for which he was employed at the time of the discharge, although his compensation was to be paid out of an award which was not secured until a later period."

But in the New York case of Shattuck v. Pennsylvania Ry. Co. (1931) 48 F.2d 346, the court, after stating, in accordance with the doctrine of Martin v. Camp, supra, that the client had the right to discharge the attorney, thus ending the contract, precluding the attorney from recovery under the stipulated contract, holds, in paragraph 3 of the syllabus as follows:

"Attorney's fees for services rendered under contingent fee contract before his discharge by plaintiff should not be fixed until plaintiff's damages are determined, though compensation is determinable on quantum meruit basis."

The basis for this holding being that the value of an attorney's services is not solely controlled by details of his services, but his skill, diligence, and the final results in the litigation are elements bearing upon the appraisement of his employment. Although the value of what he did must be based upon quantum meruit, the ultimate result of the action constitutes an element in fixing the fee. Accordingly, the demand for fixing

the value of services ahead of settlement is believed to be unreasonable.

The recovery in such cases, then, seems to be allowed upon the contract, quantum meruit entering as the measure for determining the value of the services rendered, and not in itself providing the basis of recovery.

The claim of the guardian that the claimant's right of action arose at the time of his withdrawal from the suits filed and is now barred by reason of not having been brought within five years from that date fails within itself.

Suppose the claimant had brought his action at the time of his dismissal and had, in some manner, been allowed to recover the reasonable value of his services against this ward's estate. Suppose thereafter the litigation had been prosecuted to a final determination and it had been decreed that the ward could not recover. We would, in such a case, have the inequitable situation where the claimant had recovered against the estate of the ward for services decreed by the court to have been necessary and beneficial, but which in the ultimate end would have proved worthless.

The rule which the guardian asks this court to announce in the case at bar would open the avenues of the workings of just such visible injustices.

We therefore hold claimant's cause of action not to have been based upon quantum meruit, but that quantum meruit was only the measure to be used in fixing the amount of his recovery, which could only be determinable at the conclusion of the litigation. Hence, his cause of action did not accrue until a final recovery was had, and having brought his action within five years from that time, he is not barred by the statute of limitation.

In view of the opinions expressed heretofore, the other matters raised in plaintiff in error's brief are of no force and require no further discussion.

For the reasons stated, the judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, HURST, and DAVISON, JJ., concur. RILEY, J., absent. GIBSON, J., not participating.