371 So.2d 1089 (1979)
Gerald SOHN, Appellant,
v.
Hazel BROCKINGTON and Evelyn Brockington, His Wife, Thomas E. Brown, Home Transportation Company, Inc., and Home Indemnity Co., Appellees.
No. LL-277.
District Court of Appeal of Florida, First District.
June 13, 1979.
Rehearing Denied July 6, 1979.
*1090 Gerald Sohn, Jr., Jacksonville, for appellant.
Lee S. Carlin of Wood, Godfrey & Carlin, Jacksonville, for appellees.
ERVIN, Judge.
Attorney Sohn, discharged without cause by his former client before he had accomplished the contingency stated in his contingent fee contract, appeals the quantum meruit fee award entered by the lower court, *1091 arguing first, that he is entitled to recover under the terms of the fee contract, and second, even if quantum meruit is the correct means of evaluating the fee to be awarded, the amount awarded, given the nature of the services rendered, was insufficient. We agree with the lower court as to the first point, but reverse and remand as to the second.
On August 25, 1976, attorney Sohn and his former client, Hazel Brockington, entered into a 40% contingent fee contract relating to services to be performed by Sohn pertaining to the recovery of damages resulting from injuries which had occurred to Brockington in an automobile accident. During the course of his employment, Sohn had successfully represented Brockington on his workmen's compensation claim as well as in a personal injury protection claim with Brockington's insurer. However, five months after the execution of the contract, Sohn was discharged without any cause given, and before he had filed a complaint pertaining to the common law tort action. Subsequently additional attorneys were employed by Brockington on the same percentage terms as Sohn, and, during pendency of the personal injury action, Sohn filed a motion seeking a lien on the proceeds of any recovery or settlement in accordance with his contingency contract. Ultimately Brockington's newly retained attorneys secured a settlement in the sum of $75,000. Later, at the hearing on the motion for attorney Sohn's charging lien, the court concluded that Sohn was discharged by Brockington without cause, that prior to the discharge Sohn performed valuable legal services for Brockington, all of which were rendered on the workmen's compensation claim, that based on the persuasive guidance of the Florida Supreme Court in Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193 (Fla. 1976), attorney Sohn was limited to a quantum meruit recovery for the value of his services rendered prior to his discharge, and that the value of those services as to the common law action only was determined to be $950.
We are confronted again with the same question which the Third District Court of Appeal answered in 610 Lincoln Road, Inc. v. Kelner, P.A., 289 So.2d 12 (Fla.3d DCA 1974), but which was vacated by the Supreme Court in Kelner, P.A. v. 610 Lincoln Road, Inc., supra. In Kelner, the Third District Court of Appeal held that the discharged attorney, a party to a contingent fee contract, could recover from his former client only on quantum meruit. The Supreme Court, in reversing, stated that while quantum meruit might be the proper standard when the discharge happens prior to the occurrence of the contingency stipulated in the contract, nevertheless held, since the attorney had obtained maximum recovery on behalf of his client prior to discharge, the facts did not present a question requiring it to decide whether quantum meruit was the exclusive remedy. The court therefore permitted the discharged attorney to recover on the contract.[1]
In the instant case the lower court concluded that Milton Kelner, P.A. v. 610 Lincoln Road, Inc., supra, was persuasive and that attorney Sohn was limited to quantum meruit for the legal services he had rendered only on the personal injury claim prior to his discharge. The dictum expressed in Kelner by the Supreme Court, while not controlling, is certainly persuasive, and we agree that when an attorney has entered into a contingent fee contract with his client and he is later discharged, either with or without cause before any recovery is obtained, his sole recourse is to seek damages for the reasonable value of the services he rendered before discharge.
The subject of an attorney's right to recover either under contract or quantum meruit has been one of extensive litigation. The majority rule is that an attorney employed under a contingent fee contract and discharged without fault on his part may recover damages for breach of the contract. See annot., 136 A.L.R. 232, 242 (1942). For *1092 example the courts of some states permit the discharged attorney to recover the full amount of the contingent fee for which he contracted. Carter v. Dunham, 104 Kan. 59, 177 P. 533 (1919); Harrison v. Johnson, 64 Ohio App. 185, 28 N.E.2d 615 (1940); Dolph v. Speckart, 94 Or. 550, 179 P. 657 (1919); Williams v. Philadelphia, 208 Pa. 282, 57 A. 578 (1904); White v. Burch, 19 S.W.2d 404 (Tex. App. 1929). Other courts, such as those in Missouri, permit an attorney, employed under a contingent fee contract and discharged without cause, to elect either to treat the contract as rescinded and seek quantum meruit for services rendered or to wait until the client's cause of action is liquidated by judgment or settlement and then sue for his fee according to the contract. Mills v. Metropolitan St. Ry. Co., 282 Mo. 118, 221 S.W. 1 (1920). Indiana also allows an election. French v. Cunningham, 149 Ind. 632, 49 N.E. 797 (1898). Arkansas allows recovery of the stipulated contingent fee computed upon the amount ultimately realized by the client, less the expenses which the discharged attorney would have been required to make in performing the unperformed portion of the contract. Brodie v. Watkins, 33 Ark. 545 (1878); Bockman v. Rorex, 212 Ark. 948, 208 S.W.2d 991 (1948). The rule in Wisconsin is similar. The attorney is allowed to sue for damages on the contingent fee contract based upon the amount of the settlement or judgment ultimately realized by the client, less a fair allowance for services and expenses which would have been expended by the discharged attorney in performing the balance of the contract. Tonn v. Reuter, 6 Wis.2d 498, 95 N.W.2d 261 (1959); Knoll v. Klatt, 43 Wis.2d 265, 168 N.W.2d 555 (1969).
A more recent trend of cases denies the attorney, discharged by his client before the contingency has been fulfilled, any contract action and limits his recovery exclusively to quantum meruit. See annot., 136 A.L.R. at 254. E.g., Martin v. Camp, 219 N.Y. 170, 114 N.E. 46 (N.Y. 1916); Ramey v. Graves, 112 Wash. 88, 191 P. 801 (1920); Fracasse v. Brent, 6 Cal.3d 784, 100 Cal. Rptr. 385, 494 P.2d 9 (1972); Johnson v. Long, 15 Ill. App.3d 506, 305 N.E.2d 30 (1973); In re Estate of Poli, 134 N.J. Super. 222, 338 A.2d 888 (1975).
We feel the minority rule, limiting recovery only on quantum meruit, is the more logical and should be adopted in this state. In Martin v. Camp, supra, the New York Court of Appeals held that an attorney cannot seek an action in contract against his client unless the attorney completely performs. Its rule was based upon the principle that the client has the right to terminate the contract with or without cause at any time, and, if he exercises a right which is an implied condition of the contract, he obviously cannot be held liable for damages resulting from an asserted breach of the contract, since no breach ever occurred. Therefore, the lawyer who rendered services under the contract can recover only the reasonable value of the services which he performed prior to discharge.
The New York rule was followed in the landmark decision of Fracasse v. Brent, supra, where the California Supreme Court overruled a long line of cases which had held that when an attorney is discharged without cause by his client before he has completely performed his contract, he could elect either to sue his former client for damages resulting from the breach, or he could recover in quantum meruit for the reasonable value of his services. E.g., Herron v. State Farm Mutual Insurance Co., 56 Cal.2d 202, 14 Cal. Rptr. 294, 363 P.2d 310 (1961); Moore v. Fellner, 50 Cal.2d 330, 325 P.2d 857 (1958); Oliver v. Campbell, 43 Cal.2d 298, 273 P.2d 15 (1954). The opinion in Fracasse was based both upon the nature of the contractual relationship between attorney and client as stated in Martin v. Camp, supra, and the policy reasons expressed in the concurring opinion of Chief Justice Gibson, in Salopek v. Schoemann, 20 Cal.2d 150, 124 P.2d 21 (1942).
In Salopek, the trial court had allowed an attorney's lien on the proceeds of a judgment to the extent of the reasonable value of the services and the court affirmed, the majority holding that the attorney was discharged for cause and therefore was entitled *1093 only to a quantum meruit recovery. Chief Justice Gibson concurred but stated that whether the discharge was with or without cause, the measure of damages should be the reasonable value of the attorney's services. The policy reasons for limiting an attorney to quantum meruit were forcefully and cogently stated as follows:
It is recognized as a part of the ethical rules governing the legal profession that an attorney will not sue a client for a fee except to prevent injustice, imposition or fraud. See American Bar Association, Canons of Professional Ethics, Canon 14.
The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. [Citations omitted.] Without public confidence in the members of the legal profession which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. And inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. [Citations omitted.] But that is not enough. The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. [Citations omitted.]
* * * * * *
Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence. 124 P.2d at 24-25.
We feel, for the reasons stated in Martin v. Camp, supra, Fracasse v. Brent, supra, and the concurring opinion in Salopek v. Schoemann, supra, that when an attorney, before he has completely performed under a contingent fee contract, is discharged, his recovery should be limited only to quantum meruit. Certainly if one of the goals of the attorney-client relationship is absolute confidence, a client should be free to discharge one attorney and hire another at will.[2] The reason for the discharge is simply not relevant to a determination whether recovery on the contingent fee contract or quantum meruit should be permitted[3] since it is an implied condition of the contract that the client may terminate at will.
We agree also with the Fracasse court that the adoption of a rule limiting an attorney's action exclusively to quantum meruit is unlikely to result in the wholesale discharge of attorneys by clients shopping for the least expensive fees. The clients who do so run the risk of being twice exposed to fees, once, to the discharged attorney for the reasonable value of services, which could conceivably be in excess of the contingent fee recovery,[4] and again to the substituted attorney on the contract.
*1094 While Sohn's request for a lien was directed only to the proceeds of the final settlement, we think it would be helpful to future litigants to express some general comments as to when a cause of action in quantum meruit accrues. We disagree with the California rule which permits the attorney's action to commence only when the contingency stated in the original agreement has occurred  i.e., when the client has achieved recovery either by settlement or judgment. We think the New York rule is the more logical since it permits the action immediately upon discharge. Adams v. Fort Plain Bank, 36 N.Y. 255 (1867); Tillman v. Komar, 259 N.Y. 133, 181 N.E. 75 (1932). It seems inconsistent on the one hand to hold that an attorney's exclusive remedy is quantum meruit, since it is founded on an implied assumpsit or promise by the defendant to pay the plaintiff as much as he reasonably deserved to have for his labor, Black's Law Dictionary (Rev. 4th ed. 1968), yet hold that until the contingency stated in the contract occurs, the discharged attorney's cause of action does not accrue. After discharge neither the attorney nor client is bound by the terms of the contract, therefore no contingency stated in the rescinded contract should govern the right of the attorney to bring his action immediately following discharge.
The option of electing whether to proceed immediately upon discharge or to defer the action until the ultimate accomplishment of the contingency is that of the displaced attorney. Thus if he chooses the former alternative he is entitled to seek his quantum meruit fee immediately without regard to the successful completion of litigation in the case which he contracted with his former client. Paolillo v. American Export Isbrandtsen Lines, Inc., 305 F. Supp. 250 (S.D.N.Y. 1969). If he seeks a fee award following discharge, the court may in its discretion decide that the attorney's impact on the actual outcome of the litigation is an essential factor which must be considered in determining the value of the services rendered. For example, New York courts often grant declaratory judgments holding that the discharged attorney is entitled to recover, yet defer an award of attorney's fees until after the case in controversy is brought to a conclusion.[5] E.g., Friedman v. Gordon, 260 App.Div. 1023, 23 N.Y.S.2d 757 (2d Dep't. 1940), aff'd. 285 N.Y. 630, 33 N.E.2d 555 (1941); Shattuck v. Pennsylvania R. Co., 48 F.2d 346 (W.D.N.Y. 1931).
If he decides to delay his action until the occurrence of the contingency[6] so that the court may weigh the impact of his services on the final outcome of the case, he has the right to take a contingent amount or percentage also based upon quantum meruit, the amount to be determined at an ancillary proceeding at the conclusion of the case. Id. If, however, the former client objects to the displaced attorney's request for a percentage lien, the request will be denied. Brown v. Moffitt, 5 App.Div.2d 1002, 173 N.Y.S.2d 716 (2d Dep't. 1958).
We think the reasons expounded in both New York and other jurisdictions[7] have more to commend the adoption of a rule permitting the cause to accrue immediately upon discharge rather than the inflexible California rule which requires the displaced *1095 attorney who may have performed substantial services prior to discharge to defer his action until the ultimate occurrence of the contingency, which may never happen or be inordinately prolonged due to protracted litigation.
Sohn also argues that his quantum meruit recovery of $950 from a total legal fee of $30,000, obtained by the replacing attorneys, was inadequate considering the value of services which Sohn had performed prior to discharge. Essentially, the dispute before us is between the displaced attorney and the substituted attorney. Sohn is seeking a lien on the proceeds of the settlement. In our view the lower court erred in refusing to consider what effect, if any, Sohn's services in the workmen's compensation claim contributed to the ultimate recovery of $75,000 by the substituted attorney.
The determination of the reasonable value of Mr. Sohn's efforts is complicated because he had received authority from his client to handle three claims simultaneously: the personal injury protection claim against Brockington's insurer, the workmen's compensation claim, and the common law tort claim. Prior to discharge Sohn had successfully prosecuted the first two claims and had entered into negotiations with the tortfeasor's insurer concerning possible settlement of the last. It appears from the record that the insurer, during negotiations with Sohn, never contested liability  only the extent of Brockington's injuries. Indeed the local adjuster for the tortfeasor's insurer had offered to settle Brockington's claim for $10,000 but the offer was rejected. Additionally, on February 11 and 15, 1977, after discharge attorney Sohn sent to the substituted attorney numerous medical records from his office, which had been received by him prior to discharge, and, while used primarily in the workmen's compensation claim, might have had a decisive impact in the tort claim. Sohn testified without contradiction that the physician who was instrumental in obtaining recovery for Brockington in the action against his employer was "the key to the tort claim's value."
When the displaced attorney or the court elects to measure the value of the attorney's services by the amount recovered, it is absolutely imperative that the court determine what impact, if any, the attorney's services prior to discharge had on the ultimate recovery. If the substituted attorneys relied primarily upon Mr. Sohn's work product in achieving a settlement on behalf of Brockington, then it is obvious that Sohn has been shortchanged. "[T]he result of the trial and recovery ... not infrequently are due to the preliminary conduct of the case, ... ." Shattuck v. Pennsylvania R. Co., supra at 348. The lower court, no doubt assuming that Sohn would be paid a fee for his services in the workmen's compensation claim as required by Section 440.34, Florida Statutes (1977), in essence discounted the value of those labors in evaluating the fee it awarded Sohn in the tort proceeding. Yet Sohn's services to his client during prosecution of both claims appear to be inextricably intertwined. It appears from the answer filed to interrogatories in the tort action by Brockington and his later attorney that both relied essentially upon the same physicians as were earlier used during the workmen's compensation action.
We feel, based upon the record, that fairness requires this cause to be remanded to the trial court for further consideration of Mr. Sohn's quantum meruit claim to the extent that medical reports and witnesses, utilized in the workmen's compensation claim and obtained by Mr. Sohn, may have influenced the ultimate settlement recovery with the tortfeasor's insurer. If his efforts had a substantial impact upon the amount recovered, the court should re-evaluate the apportionment of the contingent fee award between the attorneys.
MILLS, Acting C.J., and MASON, ERNEST E., Associate Judge, concur.
NOTES
[1] The court also left undecided the question whether the cause of action accrued either upon discharge or upon the occurrence of the contingency. 328 So.2d at 196.
[2] This right is recognized in Florida. Goodkind v. Wolkowsky, 132 Fla. 63, 180 So. 538 (1938).
[3] One of the points raised by attorney Sohn is that he is entitled to recovery under the terms of the contract because the sole reason for his discharge was that he refused to advance money to his client for purposes unrelated to the litigation, and had he done so, it would have been in violation of the code of professional responsibility.
[4] For example, in In re Montgomery, 272 N.Y. 323, 6 N.E.2d 40 (1936), an attorney retained for $5,000 to settle an estate was discharged after he had performed five-sixths of his labors toward completion of the settlement. He was awarded $13,000 in his quantum meruit action.
[5] There is no rational basis in permitting a quantum meruit recovery in the form of a percentage of a client's future recovery since the court cannot determine the value of all the services performed until the former client's case is concluded by either judgment or settlement. See note, Attorney-Client Relationship: Remedies of Attorneys Discharged Without Cause in Contingent Fee Contract Situations, 37 Albany L.Rev. 364, 382-83 (1972).
[6] If he delays his action until the occurrence stated in the contingency, he runs the risk of being barred by the statute of limitations in a jurisdiction which has adopted the rule that the cause of action accrues immediately upon discharge. Cf. Wright v. Johanson, 132 Wash. 682, 233 P. 16 (1925).
[7] Georgia, Watson v. Columbia Min. Co., 118 Ga. 603, 45 S.E. 460 (1903) and Washington, Wright v. Johanson, supra at fn. 6, also follow the immediate recovery theory while Oklahoma, First Nat. Bank & Trust Co. of Tulsa v. Bassett, 183 Okla. 592, 83 P.2d 837 (1938), follows the California rule.