**A. Fred MILLER, Attorneys at Law, A Professional Corporation, Petitioner,**

v.

**Mary PAUL, as Personal Representative of the Estate of Carl F. Paul, Respondent.**

**No. 5064.**

Supreme Court of Alaska.

Aug. 22, 1980.

---

Roger W. Carlson, A. Fred Miller, Ketchikan, for petitioner.

Noel McMurtray, Anchorage, for respondent.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE, and MATTHEWS, JJ.

### OPINION

BOOCHEVER, Justice.

On December 24, 1979, the superior court ordered A. Fred Miller, a professional corporation (hereinafter Miller) to turn over to Attorney Noel McMurtray the files of the Estate of Carl F. Paul and of Mary Paul, as personal representative of the Estate. The court found that the interests of Miller in being paid attorney's fees were adequately protected by an attorney's lien on any judg-

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

ment or settlement secured in a wrongful death suit which had been filed by Miller as attorney for Paul, against certain doctors and the Ketchikan General Hospital.[1] Miller has filed a petition for review of the order, contending that the order does not provide adequate security for the fees and costs due him. Because the order affects a substantial right which, in effect, will terminate the proceeding,[2] in that once the files are turned over Miller's putative lien rights to them will be lost, we have granted review.

Mary Paul, a widow, retained Miller to represent her in the probate of her husband's estate and in prosecuting a wrongful death action. A contract was executed providing for a contingent fee for services in the wrongful death claim. It specified in part:

> 4. *Costs of Action.* All costs in connection with the action shall be paid by the CLIENT immediately upon being presented with a statement therefor by the ATTORNEY.

> 5. *Lien.* ATTORNEY is given a lien on the claim or cause of action, on any sum recovered by way of settlement, and on any judgment that may be recovered, for the sum mentioned above as his fee; and ATTORNEY shall have all general, possessory, or retaining liens, and all special or charging liens, known to the common law.

> . . . . .

> 8. *Substitution or Discharge of Attorney.* Either party may terminate this agreement by ten (10) days prior written notice to the other. In the event of such termination, the ATTORNEY shall be compensated for its services at the rate of seventy ($70.00) Dollars per hour of chargeable time plus costs and expenses notwithstanding anything to the contrary contained herein.

Apparently due to a possible conflict of interest on Miller's part, Mary Paul terminated Miller's services. Miller submitted a billing in the amount of $22,941.19, which sum is disputed by Paul. Miller filed a notice of attorney's lien covering both a retaining lien on papers in his possession and a charging lien on any recovery ultimately received by Paul. Paul's substituted counsel, McMurtray, moved for an order requiring Miller to deliver the files to him. The superior court granted the motion, indicating that Miller was adequately protected by the charging lien.[3]

■ We hold that in determining what constitutes adequate security for the relinquishment of an attorney's files the trial court should consider a number of factors and set forth the basis for its decision. Since we are unable to ascertain the basis for the trial court's decision, we remand the case.

The general rule regarding the relinquishment of such files has been succinctly stated:

> American courts with few exceptions hold in cases where the attorney did not himself terminate the relation, that the client cannot compel his attorney, or former attorney, to deliver up papers or documents on which the attorney has a retaining lien, unless he pays the amount due the attorney, or furnishes adequate security for the payment of what may be due or subsequently found to be due him.[4]

Alaska has long had a statute providing for attorney's liens. *See Phillips v. Jones,* 355 P.2d 166 (1960). AS 34.35.430 specifies in part:

> *Attorney's lien.* (a) An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section

---

1. The pleadings of the case are not before us, but apparently a claim was based on the treatment furnished Carl F. Paul.

2. Alaska R.App.P. 23.

3. An attorney may have a retaining lien on the files and property of the client in the attorney's

possession and a charging lien on any judgment or funds of his client in the hands of an adverse party.

4. Annot., 3 A.L.R.2d 148, 150 (1949).

(1) first, upon the papers of his client which have come into his possession in the course of his professional employment;

(2) second, upon money in his hands belonging to his client;

(3) third, upon money in the hands of the adverse party in an action or proceeding in which the attorney is employed from the giving of notice of the lien to that party;

(4) fourth, upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.

AS 22.20.080 authorizes a court to order an attorney to deliver over papers to his client. AS 22.20.090 provides:

*Court order under § 80 of this chapter.* If an attorney claims a lien upon the money or papers under AS 34.35.430 the court, in making an order under § 80 of this chapter, shall

(1) impose, as a condition of making the order, that the client give security, in form and amount to be directed, to satisfy the lien when determined in an action; or

(2) summarily inquire into the facts on which the claim of a lien is founded, and determine it; or,

(3) direct the trial of the controversy by a jury, or refer it, and upon the verdict or report determine it as in other cases.

Miller contends that the charging lien against any proceeds of the lawsuit is inadequate security. He indicates that Paul owns an unencumbered home that could furnish security for his billing.[5] He contends that no cases void an attorney's retaining lien and leave "the attorney with a *possibility* of a lien *if* a recovery is ultimately made" by his former client.

Paul argues that adequate security for release of an attorney's lien on files in the attorney's possession in a contingent fee case is provided by a security interest in the proceeds of the litigation. She further argues that a contract providing for a retaining lien is violative of the Canons of Professional Ethics and therefore is void and unenforceable.

■ A trial court must exercise its discretion in providing for adequate security for relinquishment of files. On review, we must apply an abuse of discretion standard. We must therefore decide whether the trial court abused its discretion by ordering release of the files and leaving the attorney to look to his charging lien on any eventual judgment.

We note initially that courts, at least where the adequacy of the lien is not contested, have provided for a lien against the eventual proceeds of a lawsuit as security for turning over files in an attorney's possession.[6] A valid question is certainly presented as to the adequacy of such contingent security for release of files held to assure payment of an attorney's fixed fee based on a reasonable hourly rate. Disregarding the dispute as to the amount due Miller, it seems clear that the hourly rate of $70.00 is reasonable on a noncontingent basis. Normally, when an attorney undertakes to handle a matter on a contingent fee basis, the uncertainty of recovery is offset by an enhanced fee if successful.

---

5. There is no indication of whether this information was furnished to the trial court. If it was, the court could exercise its discretion in determining whether it is just to require Paul's home to be encumbered as a condition for release of files under the circumstances involved in this case. Only in an extreme case would the requirement of encumbering a home be justified. The Alaska legislature has, with certain exceptions, exempted homesteads from judicial sale, evincing a policy in favor of preserving rights to a homestead. AS 09.35.090.

6. *See Goldenstein v. Goldenstein,* 28 A.D.2d 962, 283 N.Y.S.2d 167 (N.Y.App.Div.1967); *Antaya v. Majett,* 12 Misc.2d 585, 177 N.Y.S.2d 242 (N.Y.Sup.Ct.1958). There is no indication, however, that the attorneys disputed the adequacy of the charging liens.

Here Miller has relinquished his opportunity for an enhanced fee, but seeks assurance that he will be paid the amount due at the fixed hourly rate. We note, however, that, although the charging lien security is based on the contingency of Paul's winning her case, the obligation, unlike that of a contingent fee, remains fixed. In other words, since Paul terminated the contract, she will be obligated to pay the fixed fee even if she eventually loses her case.[7]

In ascertaining whether security is adequate, the court should consider whether a fixed fee is involved and the contingent nature of security provided.

■ Paul contends that Miller's statutory and contractual liens must give way to an attorney's ethical duty not to prejudice a client's case by withholding access to relevant materials in the attorney's possession. Attorneys must conform to high ethical standards regardless of whether statutory rights permit contrary conduct.[8] In *Academy of California Optometrists, Inc. v. Superior Court*, 51 Cal.App.3d 999, 124 Cal.Rptr. 668 (1975), enforcement of the attorney's lien on a client's files was held to be viola-

tive of ethical duties owed by a lawyer to his client and contrary to public policy of the state. In *Academy*, there was no statutory or judicial authorization for an attorney's lien. The question presented was whether a consensually created retaining lien was valid. In that case an attorney, who was discharged because of a dispute as to the amount of his billings, claimed a lien on papers in his possession that were essential to the continuation of his client's lawsuit. The court relied on Ethical Consideration 2–32, which has been adopted as part of Alaska's Code of Professional Responsibility, in holding that the lien was unenforceable.[9] Unlike the California court, we do not believe that EC 2–32 mandates return of a client's files when the client terminates the relationship. It seems to us that the provision is specifically designed to apply when a lawyer withdraws, not when the client secures new counsel.

Regardless of EC 2–32, however, a question is presented as to whether ethical considerations require that a lawyer return the client's files. Paul had the right under the contract to fire her attorney without cause.[10] An attorney should have the right

---

7. Courts have adopted various methods of compensating discharged attorneys who were retained on a contingent fee basis. They include allowance of the full contingent fee, recovery on a quantum meruit basis and payment of the agreed contingent fee amount less the value of services required to complete the contract. *See generally* Note 24, Hastings L.J. 441 (1973); Note, *Attorney-Client Relationship: Remedies of Attorneys Discharged Without Cause in Contingent Fee Contract Situations*, 37 Albany L.R. 364 (1973).

8. *See Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 116–17 (La.1979) (*on rhg.*).

9. EC 2–32 specifies:
    A decision by a lawyer to withdraw should be made only on the basis of compelling circumstances, and in a matter pending before a tribunal he must comply with the rules of the tribunal regarding withdrawal. A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of his client and the possibility [sic] of prejudice to his client as a result of his withdrawal. Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggest-

ing employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. Further, he should refund to the client any compensation not earned during the employment.

10. The contract in this case provided for termination by either party with ten days' notice and, in such a situation, the attorney is to receive compensation at $70.00 per hour for work completed. The parties have not raised the question of whether the clause converting the fee arrangement from a contingent basis to a fixed hourly rate on termination is itself valid. We note that recent cases give strong arguments for disallowing such provisions, but we do not reach that issue at this time. *See Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972); *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La.1979) (*on rhg.*); Annot., 92 A.L.R.3d 890 (1979). Nor do we need consider whether recovery for termination of an attorney employed under a contingent fee contract is limited to quantum meruit. *Fracasse v. Brent*, 494 P.2d at 13; *Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46, 48 (1916).

to some protection, assuring payment of reasonable fees earned. A balancing of those interests is required in determining what security should be required for relinquishment of the attorney's retaining lien.

If the client does not initiate the withdrawal, or if there is just cause for the client to discharge the attorney, ethical considerations mandate return of the files. Even where the client terminates the relationship without just cause, the court must consider the value of the files to the client's case in determining the adequacy of the security to be requested. If the client is of limited resources, as is often the case in contingent fee cases, and the files in the attorney's possession are of vital importance in processing the client's claim against a third party, the substitution of a charging lien for the retaining lien may be the only permissible remedy consistent with the preservation of the client's right to sever the relationship. Economic duress may not be utilized to prevent a client from exercising the right to terminate the relationship with the attorney. On the other hand, where the client is well able to post a bond or give other security without the imposition of substantial hardship, we see no impediment to imposing such a requirement.

As we have indicated, one consideration involves the conduct of the attorney. If the discharge is due to a conflict of interest or other type of conduct prohibited by the Code of Professional Responsibility, a court is justified in ordering that the files be transferred without any security.[11]

It has been recognized that where the termination of the relation of attorney and client was chargeable to the attorney, either through his voluntary termination of the relation, or through his discharge because of his negligence or other

misconduct, the retaining lien of the attorney on any papers or documents is thereby lost, and the client is entitled to the delivery of such papers or documents.[12]

■ It is argued in opposition to the petition for review that the change of attorneys was necessary because of a conflict of interest on Miller's part. The record on this petition for review does not enable us to ascertain whether such an issue was presented to the trial court, and, if so, whether it was a consideration in the court's decision. In fact, based on the record before us it is impossible to determine what considerations gave rise to the trial court's decision. We conclude that factors to be weighed in determining what security, if any, should be required for release of files should include, among others:

(a) Whether there was just cause for discharging the attorney;

(b) Whether the attorney initiated the withdrawal;

(c) The client's ability to provide security or to pay the fee;

(d) The importance of the files to the client;

(e) The ethical obligations of an attorney;

(f) Whether the fee is disputed, and, if so, the reasonable amount of any lien to be charged;[13]

(g) Whether the amount due the attorney is contingent or fixed;

(h) Whether part of the sum due is for costs advanced by the attorney which may justify reimbursement before ordering release of the files.

We remand the case to the trial court for the purpose of setting forth the reasons for its decision. The court, in its discretion,

11. *See Moses v. McGarvey*, 614 P.2d 1363, (1980).

12. Annot., 3 A.L.R.2d 148, 159 (1949).

13. In most cases decisions as to the specific amount due can be deferred for later resolution without prejudicing the parties' rights.

may receive additional evidence and reconsider its decision in light of this opinion.[14]

REMANDED.

MATTHEWS, Justice, dissenting.

In my view the following principles govern this case. A client has an absolute right to discharge his attorney with or without cause without undergoing financial penalties. *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972); *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 234 S.E.2d 282 (1977); *Covington v. Rhodes*, 38 N.C.App. 61, 247 S.E.2d 305 (1978); *Sohn v. Brockington*, 371 So.2d 1089 (Fla.App.1979). When the contract between the parties is a contingent fee contract and the contingency has not occurred, the discharged attorney's recovery should be limited to the reasonable value of his services. *Id. See generally* Annot. 92 A.L.R.3d 690, 694–703 (1979). In determining the reasonable value of the discharged attorney's services, the compensation terms of the contract and the ultimate result of the litigation are factors which should be considered. *Newman v. Melton Truck Lines, Inc.*, 443 F.2d 896 (5th Cir. 1971); *Potts v. Mitchell*, 410 F.Supp. 1278 (W.D.N.C.1976); Annot. 92 A.L.R.3d 702–703 (1979). The attorney who has been discharged from a contingent fee contract is not entitled to be paid until and unless the contingency has occurred. Imposing an immediate obligation to pay unduly burdens the client's right to discharge his attorney and, additionally, is often unfair to the client because he cannot afford to pay the fee unless a recovery in the case is received. *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9, 14 (1972); *First National Bank & Trust Co. of Tulsa v. Bassett*, 183 Okl. 592, 83 P.2d 837, 840 (1938); *see Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 116–17 (La.1979).

Because the order of the superior court is consistent with the parties' rights as defined in accordance with the foregoing principles I would affirm.

14. We do not intend any inferences as to the adequacy or inadequacy of the security previously ordered.