REED & STEVEN, d/b/a Storm Partners, a Florida corporation, Plaintiff,

v.

HIP HEALTH PLAN OF FLORIDA, INC., a Florida corporation, Defendant.

No. 996241CIV.

United States District Court, S.D. Florida.

Oct. 7, 1999.

Lee Mandell, Miami, FL, for plaintiffs.

Richard B. Simring, Stroock Stroock & Lavan, Miami, FL, for defendants.

Jose Francisco De Leon, Department of Justice—Tax Division, Washington, D.C., David A. Pearl, Lucio, Bronstein, Garbett, Stiphany & Martinez, P.A., Miami, FL, Brian Freeman, St. Ives, Inc., Silver & Garvett, Miami, FL, for Lienholders.

## ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the Report and Recommendation issued by Magistrate Judge Barry L. Garber on September 7, 1999. Having conducted a *de novo* review of this matter, it is

ORDERED AND ADJUDGED that Magistrate Judge Garber's Report and Recommendation is AFFIRMED and ADOPTED in its entirety. Accordingly, it is further

ORDERED AND ADJUDGED that the United States' motion for summary judgment (D.E.# 5) is GRANTED IN PART, only to the extent of declaring that the federal tax liens against the settlement funds in this action have priority over the writ of garnishment asserted by St. Ives, Inc. The United States' motion for entry of judgment determining that the federal tax liens are entitled to priority to the extent of $30,000 (out of the total settlement proceeds of $50,000) is DENIED. The United States' motion for an order directing the disbursement of $30,000 to the United States is similarly DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's motion for order of disbursement (D.E.# 4) is GRANTED. Lee Mandell P.A. is AUTHORIZED and DIRECTED to disburse to Lee Mandell P.A. the sum of $19,000 from the total of $50,000 in settlement funds currently being held in the trust account of Lee Mandell P.A. Disposition of the remaining $31,000 in settlement funds as between Lucio Mandler, et al. and the United States shall abide Magistrate Judge Garber's determination of the reasonable amount of fees owed by the plaintiff to Lucio Mandler, et al.

### OMNIBUS REPORT AND RECOMMENDATION AND ORDER

GARBER, United States Magistrate Judge.

THIS MATTER is before the Court on Plaintiff's Motion for Order of Disbursement [DE–4], United States' Motion for Summary Judgment [DE–5] and Plaintiff's Request [Motion] for Oral Argument [DE–11] pursuant to an Order of Reference entered by United States District Judge Shelby Highsmith. No hearing was held on these matters.

### STANDARD OF REVIEW

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when: the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court

must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### FACTUAL AND PROCEDURAL HISTORY

Reed & Stevens ("Reed") sued HIP Health Care ("HIP") for breach of contract in the Judicial Circuit Court in Broward County, Florida. That case involved allegations that HIP refused to pay for advertising or other services allegedly rendered by Reed to HIP. At the origination of the lawsuit on May 16, 1997, Lucio, Mandler, Croland, Bronstein, Garbett, Stiphany & Martinez ("Lucio Mandler") represented Plaintiff Reed. Subsequently, on September 12, 1997, the Internal Revenue Service ("I.R.S." or "the Service") served a Notice of Levy upon HIP with respect to Plaintiff's outstanding employment tax liabilities which totaled $216,956.65 as of October 12, 1997. On October 23, 1997, Lucio Mandler obtained an Order from the Broward Court permitting it to withdraw as counsel from the case. On that same day, Lucio Mandler filed a notice of charging lien in the amount of $15,038.40 for attorneys' fees owed by Plaintiff. Plaintiff had already paid Lucio Mandler an additional amount of $5074.17 in fees.

On January 29, 1998, Reed entered into a contingency fee agreement with Lee Mandell, P.A. ("Mandell") to represent it in the ongoing litigation with HIP. That agreement provided that Mandell would receive 40% of the gross sums recovered on behalf of Reed by verdict, settlement or otherwise. In addition, Reed and Mandell agreed that any monies paid to Lucio Mandler for its work would not be deducted from Mandell's compensation under the agreement. On or about April 7, 1998, Reed and HIP reached a settlement agreement whereby Reed was to receive a payment of $50,000 for settlement of its claim against HIP. On May 4, 1998, St. Ives, Inc. ("St. Ives"), in another action filed in the Seventeenth Judicial Circuit, obtained a Writ of Garnishment in the amount of $7500 against HIP as garnishee. St. Ives later obtained a Final Judgment of Garnishment on January 18, 1999, but that Order of Judgment was vacated on March 11, 1999.

In order to resolve the competing claims, HIP filed a Motion to Determine Lien Priorities Against Settlement Proceeds ("Lien Priorities Motion"). According to the Certificate of Service attached to that Motion, it was served upon Warren Rogers of the IRS in Deerfield Beach, Florida. It was not served upon either the United States Attorney or the Attorney General in Washington, D.C. A hearing on the Lien Priorities Motion was scheduled for February 4, 1999. All parties having an interest in the settlement funds appeared for that hearing, with the exception of the I.R.S.

On February 4, 1999, the Broward Court issued an Order ruling that the $50,000 in settlement proceeds were to be paid to the trust account of Mandell. Mandell was then authorized to pay itself its legal fees in the amount of $19,000 (40% of the proceeds less a $1000 retainer). The court then determined that Lucio Mandler's lien had priority over all the remaining liens, but the court did not determine the amount of the lien. The court also did not reach the issue of the I.R.S. and St. Ives' liens, which it found to be subordinate to the liens of the attorneys, and instead issued an order to show cause to the I.R.S. The court set a hearing on the show cause order for March 1, 1999. On February 23, 1999, the I.R.S. removed the case to this Court. All of the settlement proceeds remain in Mandell's trust account as Mandell was advised by the I.R.S. not to disburse those funds.

### DISCUSSION

The issues before the Court on these motions are two-fold. First, may the Court revisit the ruling of the Broward Court when the Service was not given

notice of the proceeding as prescribed by Fed.R.Civ.P. 4(i)? Second, what is the priority of the liens attached to the $50,000 in settlement funds currently held in Mandell's trust account? Because the Court finds that its answer to the second question is identical to that of the Broward Court, it need not determine whether the Broward Court's Order is binding upon the I.R.S., which was not a party to that action and did not make an appearance at the hearing which resulted in that Order.

### I. Controlling Statute.

 Failure to pay taxes owing to the federal government creates a lien in the amount of the liability in favor of the United States on all property and rights to property belonging to the taxpayer. 26 U.S.C. § 6321. The lien continues until the liability is satisfied. *B & H Opticks, Inc. v. Internal Revenue Serv.*, 633 F.Supp. 1356 (E.D.Mo.1986). Federal law determines the relative priority of a federal tax lien and competing liens. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp.*, 106 F.3d 366, 371 (11th Cir.1997). Both attorneys claim that under federal law, their liens are entitled to the protection of the superpriority of attorneys' fees liens as provided in 26 U.S.C. § 6323:

> (b) Protection for certain interest even though notice filed.—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid.
>
> \* \* \* \* \* \*
>
> (8) Attorney's liens.—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract

enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement....

The purpose of § 6323(b)(8) is "to give superpriority to attorney compensation based on a lien which becomes choate 'even though notice has been filed' of the federal tax lien." *Capuano v. United States*, 955 F.2d 1427, 1433 (11th Cir.1992). The theory behind this principle is that the attorney who helped to generate the funds has priority in order to procure a judgment that benefits the taxpayer which ultimately benefits the government through the creation of additional assets. *Park City Leasing, Inc. v. V.I.P. Mobile Phone Ctrs., Inc.*, 763 F.Supp. 140, 142 (E.D.Pa. 1991).

 In order to benefit from the superpriority under this provision, an attorney must establish three elements: (1) that a fund was created out of a judgment or settlement of a claim, *see United States v. Kuss*, 69–2 U.S. Tax Cas. (CCH) ¶ 9492, 1969 WL 18249 (E.D.Pa.1969); (2) that local law would recognize the existence of a lien, *id.*; and (3) that the amount of the lien reflects the extent to which their efforts reasonably contributed to the award. *See Oakland Raiders v. Brown*, 1976 WL 953, 77–1 U.S. Tax Cas. (CCH) ¶ 9440 (N.D.Cal.1976); *see also Markham v. Fay*, Case No. 91–10821–Z, 1993 WL 160604 (D.Mass. May 5, 1993) (holding that attorneys' liens take precedence over federal tax lien where the fees were reasonable and were incurred in obtaining a judgment from which the funds were created).

### II. Both Attorneys' Liens Have Priority Over The Service's Tax Lien.

 All parties[1] agree that Mandell is entitled to payment of the $19,000 it is

---

1. Lucio Mandler, however, argues that its lien should have priority over Mandell's because its lien predated Mandell's involvement in this case. The Broward Court, however, has already ruled that Mandell's lien has first priority. The Court will not revisit that ruling as it relates to Mandell and Lucio Mandler who were both given notice of that hearing and appeared before the court.

owed from the settlement proceeds.[2] The dispute that remains, however, is whether the I.R.S. should collect the remaining $31,000 or should Lucio Mandler be permitted to collect against its charging lien first with any remaining funds then being paid to the I.R.S.[3] The I.R.S. takes the position that because its lien was "first in time," it is also "first in right." In response, Lucio Mandler contends that its charging lien qualifies for the superpriority protection of § 6323 which specifically exempts certain later-filed liens from the "first in time" rule.

Addressing the first of the three criteria necessary to find that the charging lien has superpriority, the Court finds that there is no factual dispute that the $50,000 at issue is in existence as the result of a settlement at least partially procured by Plaintiff's discharged attorneys. Accordingly, the first and third prongs are satisfied.

The second prong relates to whether local law recognizes Lucio Mandler's lien. Under Florida law, if an attorney secures a judgment for a client, the attorney is entitled to a lien against that judgment, and that lien relates back in time to when the attorney first began to represent the client. *GTE Directories Corp. v. Ad–Vantage Tel. Directory*, 892 F.Supp. 254, 256 (M.D.Fla.1995) (holding that lien of the lawyers is superior to that of the government pursuant to the Tax Lien Act). Accordingly, the second prong is satisfied. Moreover, Florida law recognizes the possibility that two attorneys may have a claim against a single judgment or settlement achieved on behalf of a client. *See Adams v. Fisher*, 390 So.2d 1248 (Fla. 1st DCA 1980) (client is required to pay substituted attorney full contingency amount and discharged attorney was entitled to quantum meruit award). Under Florida law, a client has the absolute right to discharge his attorney at any time. *Levin v. Rosenberg*, 372 So.2d 956, 958 (Fla. 3d DCA 1979). Moreover, upon discharge, an attorney who has a contingency relationship with his client has no right to collect his contingent fee. *Sohn v. Brockington*, 371 So.2d 1089,1093 (Fla. 1st DCA 1979), *cert. denied*, 383 So.2d 1202 (Fla.1980). Instead, the discharged attorney has the option of collecting his fee immediately on the basis of quantum meruit, or he may wait until the completion of the litigation to seek an award of fees. *Adams*, 390 So.2d at 1250–51.

In *Adams*, the court held that the lower court was in error when it awarded the discharged attorney a portion of the fees collected by the substitute attorney. *Id.* at 1251. The *Adams* Court ruled that the trial judge should have ordered the client to pay his substituted attorney the full amount of his contingency as required by their contract while at the same time paying his discharged attorney a payment of fees based on quantum meruit. *Id.*

> The adoption of a rule limiting a [discharged] attorney's action exclusively to quantum meruit is unlikely to result in the wholesale discharge of attorneys by clients shopping for the least expensive fees. The clients who do so run the risk of being twice exposed to fees, once, to the discharged attorney for the reasonable value of services, which conceivably could be in excess of the contingent fee recovery, and again to the substituted attorney on the contract.

*Sohn*, 371 So.2d at 1094.

The government takes the position that superpriority status only applies to "reasonable compensation" which under Florida law cannot exceed the 40% contingency authorized by Florida Bar Rule 4–1.5(f)(4)(B)(i). Thus, the government argues that the remaining 60% of the funds should be disbursed to it. That assertion, however, is not supported by Florida case-

---

**2.** Accordingly, Plaintiff's Motion for Order of Disbursement should be GRANTED.

**3.** St. Ives has not filed any papers responding to any of the above motions. Accordingly, the Court finds by default that its interests are subordinate to those of the I.R.S. and Plaintiff's attorneys.

law in instances where a party's former and present attorneys are both entitled to compensation. *See Sohn,* 371 So.2d at 1094; *Adams,* 390 So.2d at 1251; *see also* 4 Fl.Jur.2d § 367 (1994) (client who discharges attorney subject to contingency fee arrangement prior to completion of litigation and retains subsequent counsel is responsible for fees to both attorneys).

Applying Florida law and the principles of quantum meruit, the Court finds that Lucio Mandler is entitled to some compensation pursuant to its charging lien to the extent that its work contributed to the procurement of the settlement proceeds in this case. The Court does not, however, have before it evidence of Lucio Mandler's efforts on behalf of its former client and thus cannot evaluate at this time what amount, if any, Lucio Mandler would be entitled to on a quantum meruit basis. Accordingly, the government's Motion for Summary Judgment should be granted, in part, and denied, in part. Mandell should collect $19,000; Lucio Mandler should collect a reasonable amount on the basis of quantum meruit to be determined after an evidentiary hearing; and the United States should recover any remaining funds.

### RECOMMENDATION

For the foregoing reasons, this Court RESPECTFULLY RECOMMENDS that Plaintiff's Motion for Order of Disbursement [DE–4] be GRANTED and United States' Motion for Summary Judgment [DE–5] be GRANTED, in part, and DENIED, in part. The Court should issue an Order disbursing $19,000 in settlement funds being held in the trust account of Lee Mandell, P.A. to Lee Mandell, P.A. The remaining $31,000 should be distributed first to Lucio Mandler pursuant to its charging lien, in a reasonable amount to be determined after an evidentiary hearing, with the remaining funds, if any, being distributed to the United States in partial satisfaction of its tax lien.

It is furthermore ORDERED that Plaintiff's Request [Motion] for Oral Argument [DE–11] is GRANTED and a hearing will be held on Friday, October 8, 1999 at 10:00 a.m. to determine the reasonable amount of fees owed to Lucio Mandler in Courtroom VII at the United States Courthouse, 300 N.E. 1st Avenue, Miami, Florida 33132. **No later than September 24, 1999,** Lucio Mandler shall submit to the Court a memorandum and any pertinent affidavits, billing statements, etc. detailing the fees to which it believes it is entitled. That filing shall be served upon all parties as well as the United States Attorney. Opposing memorandum, if any, **shall be filed with the Court and with a copy provided to the undersigned no later than October 5, 1999.**

The parties have ten (10) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Shelby Highsmith, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). Sept. 7, 1999.