*In re* ESTATE OF PHILLIP EDWARD CALLAHAN, a Disabled Person (Deborah Oughton, Guardian, Plaintiff-Appellant, v. John C. Parkhurst, Claimant-Appellee).

Third District   No. 3—89—0002

Opinion filed September 7, 1989.

Todd A. Smith, Philip H. Corboy, and Thomas A. Demetrio, all of Corboy & Demetrio, P.C., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant.

Bartley, Fraser, Parkhurst & Hession, of Peoria (John C. Parkhurst, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The matter at issue in this appeal involves the measure of damages for a discharged attorney, and when a cause of action for those damages accrues to the attorney so discharged. We believe it is a matter of first impression for Illinois courts, and to fully understand the issue, a brief recitation of the factual background in which it arises is helpful.

On May 27, 1985, Phillip Callahan was injured in a highway accident and left totally disabled. Deborah Oughton, Phillip's wife, was appointed guardian on behalf of Phillip, a disabled adult.

On May 29, 1985, Mrs. Oughton entered into a contingent fee contract with the law firm of Bartley, Parkhurst, Hession and Schroeder, to represent her in all matters arising from her husband's accident. Pursuant to the contract, the attorney fees to be paid were to be 25% of any amount recovered for the ward by way of suit, settlement or in any other manner. The claimant in the instant action, John C. Parkhurst, was the attorney principally responsible for the representation.

On August 11, 1986, Mr. Parkhurst and his firm were discharged, by letter, as attorneys for the guardian and her ward. In August of that same year, the law firm of Corboy and Demetrio, P.C., formally replaced the Parkhurst law firm, and later that same month, the Parkhurst law firm filed this action as a claim for attorney fees. Subsequently, the Parkhurst law firm's cause of action was assigned to John C. Parkhurst, individually.

This action for legal fees proceeded to trial before the underlying action arising from the automobile accident was adjudicated or settled. In the trial, the circuit court of Peoria County heard evidence that the claimant law firm rendered legal services to the guardian and her ward for more than a year. The Peoria County court determined that based upon the testimony, the claimant was entitled to $36,000 for legal services rendered, which was held to be presently due from the assets of the guardianship estate. The court further retained jurisdiction of the claimant's action to determine any further fee due from any future recovery by the employer of Phillip Callahan through its workers' compensation insurance carrier.

The guardian and her ward appealed the circuit court decision seeking a reversal and an accompanying direction to delay further action on the issue of attorney fees until the occurrence of the contingency in the original fee contract. In the alternative, the guardian and her ward assert that the fees established by the circuit court were not supported by the evidence. Finally, the appellants urge that it was er-

ror to reserve jurisdiction over the attorney fees owing the claimant as a result of the workers' compensation matter.

The briefs of both parties and our own review of the case law establish *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, as the leading case in Illinois governing the issue of fees for discharged attorneys. In that case, William D. Rhoades sustained an injury, while in the employ of the Norfolk and Western Railway Company. He considered filing suit against the railroad, and to that end he telephoned the law firm of Chapman and Chapman. An investigator associated with the law firm visited Mr. Rhoades at his home and, after some discussion, a retainer contract was signed authorizing the Chapman law firm to represent Rhoades for a 25% contingent fee. The next day, after a change of mind, Mr. Rhoades again telephoned the Chapman firm with instructions to not proceed with a lawsuit. Despite the client's instructions, suit was filed along with a declaration of lien for attorney fees. When no explanation of this unauthorized lawsuit was forthcoming, Mr. Rhoades dismissed the Chapman firm as his attorney. Subsequently, the lawsuit, but not the lien claim, was dismissed, and Rhoades settled his claim against the railroad for $15,000. The adjudication of the lien claim was appealed to the Illinois Supreme Court. In its decision, the high court concluded the statutory prerequisites for maintaining the lien had not been met. Thus, recovery, if any, would be limited to the amount owed as a consequence of the attorney-client relation between Chapman and Rhoades.

The *Rhoades* court repeated what had been established law in Illinois: first, a client may discharge his attorney at any time with or without cause; and, second, the attorney so discharged is entitled to full contract fees if the dismissal was without cause. (*Rhoades*, 78 Ill. 2d at 227, 228.) Then, in departing from this established rule of Illinois law, the *Rhoades* court followed the reasoning of the California Supreme Court in *Fracasse v. Brent* (1972), 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385. In summarizing that reasoning, the Illinois court reported;

> "[T]he client's right to discharge his attorney at will is not a breach of the contract but a term of the contract implied by law because of the special relationship between attorney and client and that it would be anomalous and unjust to hold a client liable in damages for exercising that implied right. The court rejected the argument that it would be too difficult to ascertain the amount of recovery under a quantum meruit theory, since such calculations are often made in other situations. It

also rejected the argument that the abandonment of the rule granting attorneys discharged without cause full contract fees would encourage unjustified discharging of attorneys by clients motivated solely by a desire to avoid attorney's fees. In most instances, clients would hire another attorney and would still be liable for fees; in cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered. The California court concluded that its holding protected the client's right to discharge the attorney and also acknowledged the attorney's right to fair compensation for work performed." (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 229, 230, 399 N.E.2d 969.)

It is clear that the *Rhoades* court adopts for Illinois one prong of the two-pronged holding in *Fracasse*. It is not evident that the *Rhoades* court adopts both parts of the *Fracasse* decision. In *Fracasse*, the court held

"that an attorney discharged with or without cause is entitled to recover the reasonable value of his services rendered to the time of discharge. *** [Also,] the cause of action to recover compensation for services rendered under a contingent fee contract does not accrue until the occurrence of the stated contingency." (*Fracasse v. Brent*, 6 Cal. 3d at 792, 494 P.2d at 14-15, 100 Cal. Rptr. at 390-91.)

The *Rhoades* court did not address the issue of when the cause of action to recover compensation accrued, in part because under the facts in *Rhoades*, by the time the fee issue was litigated, the contingency, the settlement for $15,000, had occurred. That differs from the facts faced by the California court in *Fracasse*. In the California case, the personal injury action was still pending and the contingency had not occurred. In resolving the first issue raised on appeal, we must determine, as a matter of first impression, when the cause of action accrues in Illinois under these facts.

The prevailing policy consideration in both *Rhoades* and *Fracasse* is explained in the latter decision:

"The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. *** Without public confidence in the members of the legal profession which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the

proper administration of justice. And inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. *** But that is not enough. The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered." (*Fracasse v. Brent*, 6 Cal. 3d at 789, 494 P.2d at 12, 100 Cal. Rptr. at 388.)

We must have a rule, therefore, that does not force on the client the choice—which is really no choice—of continuing with an attorney in whom he has no confidence or of subjecting himself to unaffordable attorney fees. The same rule should insure "against unscrupulous defendants who might induce plaintiffs to discharge their attorneys, even after the attorney has expended time and effort, in order to avoid having to pay plaintiffs a larger settlement." *Rhoades*, 78 Ill. 2d at 228.

■■■ It is clear that under some attorney-client relationships, the cause of action of the discharged attorney for fees accrues without any intervening contingency. In *Simon v. Auler* (1987), 155 Ill. App. 3d 1000, 508 N.E. 2d 1102, the court allowed a dismissed attorney to recover from a retainer on deposit—an ascertainable fund—even though the dissolution action he was retained to prosecute was never filed after a reconciliation of the parties. A similar rule was followed in *In re Marriage of Reczek* (1981), 95 Ill. App. 3d 220, 420 N.E.2d 161. While the attorney-client relationships in *Simon* and *Reczek* do not provide for payment of fees on the occurrence of a contingency, neither, we would argue, does the contract in *Rhoades* or the case at bar. The client's right to discharge his attorney at will is not a breach of contract, but a term of the contract implied by law because of the special relationship between attorney and client. (*La Rocco v. Bakwin* (1982), 108 Ill. App. 3d 723, 439 N.E.2d 537.) In exercising that right, the client terminates the contract. (*Fracasse*, 6 Cal. 3d at 790, 494 P.2d at 13, 100 Cal. Rptr. at 389.) While the discharged attorney cannot claim damages as measured by the contract, because the contract

has been terminated according to its implied terms, so too the client should not be shielded by the contract unless an overriding public policy concern intervenes. The client should not be permitted to forestall payment of his obligations in reliance on a contract which has been terminated, unless this creates an impediment to the client's preeminent right to discharge his attorney.

We believe a more flexible rule is appropriate to determine when the discharged attorney may prosecute his claim for fees, more flexible, that is, than the rule set forth in *Fracasse*. In application of the rule, courts should be guided by the public policy considerations set forth in *Rhoades*. We opt for a more flexible rule than the *Fracasse* court because the discharged attorney, who invested valuable time and talent on his client's behalf, should not necessarily be denied any recovery where his successor is inept. This is particularly true where a ready source of payment exists and the client's right to discharge is not impeded. This more flexible rule has recently been adopted by courts of other jurisdictions, which recognize the inherent unfairness of binding the attorney to the terms of the terminated agreement but not the client. *Sohn v. Brockington* (Fla. App. 1979), 371 So. 2d. 1089.

■■■ *Quantum meruit* is a legal remedy, which is included under the umbrella of quasi-contract, the general category of claims for the redress of unjust enrichment. (A. Farnsworth, Contracts 99 (1982).) In fashioning such remedies, and to prevent unjust enrichment, courts must have the discretion necessary to tailor remedies that are just under the factual circumstances. The court can do that in adjudicating the claim and in monitoring its collection, where, as here, the ward's estate presents an ascertainable fund for satisfaction of the claim. We hold the circuit court made no error in proceeding to adjudicate the claim for fees.

■ We also find sufficient evidence in the record to support the trial court's award of $36,000 in fees for services rendered. The record contains an extensive recitation by Mr. Parkhurst of the services performed on behalf of the guardian and her ward. This testimony was corroborated by documentation from the law firm files. Judge Voelker, who presided over this matter in the circuit court, was in a superior position to assess the value of the services rendered based on the testimony and the exhibits offered. (*Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E. 1115.) The record on appeal amply supports the assessment he made.

■■ Finally, the circuit court reserved judgment on the award of attorney fees based on the outcome of the workers' compensation proceeding. Payment of attorney fees for representation under the Work-

ers' Compensation Act is to be determined by the Illinois Industrial Commission. (Ill. Rev. Stat. 1987, ch. 48, par. 138.16a.) Accordingly, that portion of the trial court order relating to the compensation claim is erroneous and must be reversed.

For the reasons set forth, the order of the circuit court of Peoria County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

HEIPLE and STOUDER, JJ., concur.