(No. 69367

*In re* ESTATE OF PHILLIP EDWARD CALLAHAN, a Disabled Person (Deborah Oughton, Guardian, Appellant, v. John C. Parkhurst, Appellee).

*Opinion filed August 14, 1991.—Rehearing denied September 30, 1991.*

34

HEIPLE and BILANDIC, JJ., took no part.

MILLER, C.J., concurring in part and dissenting in part.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, Todd A. Smith and David A. Novoselsky, of counsel), for appellant.

John C. Parkhurst, of Peoria, appellee *pro se.*

JUSTICE MORAN delivered the opinion of the court:

The law firm of Bartley, Parkhurst, Hession and Schroeder (the Parkhurst firm) was employed on a contingent-fee basis by Deborah Oughton (wife and guardian of Phillip Edward Callahan) to represent her in all mat-

ters arising from her husband's automobile accident. She later discharged the firm, which then filed a claim for attorney fees in the circuit court of Peoria County. The law firm's claim was later assigned to an individual member of the firm, John C. Parkhurst, claimant herein. The trial court awarded the claimant $36,000 as the value of legal services rendered to the estate. On appeal, the appellate court affirmed the $36,000 judgment, but reversed that portion of the order wherein the trial court retained jurisdiction for the purpose of determining further fees that may be due the claimant from any recovery by the ward's employer under its workers' compensation lien. (188 Ill. App. 3d 323.) This court allowed plaintiff's petition for leave to appeal (134 Ill. 2d R. 315(a)).

The issues presented are whether: (1) a discharged attorney's cause of action for a *quantum meruit* fee accrues prior to the resolution of his former client's lawsuit; (2) a discharged attorney can recover his fee from the workers' compensation benefits paid to the estate; (3) the trial court abused its discretion in awarding $36,000 to the claimant; and (4) the Illinois Industrial Commission is the proper forum to determine whether the claimant is entitled to any portion of the 25% fee assessed against the employer's workers' compensation lien.

The relevant facts are as follows. Phillip Callahan was employed in Springfield, Illinois, by the National Federation of Independent Business. While en route to a meeting connected with his employment, he became totally disabled when his car collided with a garbage truck. Ms. Oughton was appointed guardian of her husband's estate. In May of 1985 she entered into a contingent-fee contract with the Parkhurst firm wherein the firm was to be paid 25% of any amount recovered for the ward by

way of suit, settlement, or in any other manner, for claims arising from her husband's automobile accident.

The Parkhurst firm received a discharge letter on August 11, 1986. The guardian retained other counsel and all legal matters relating to her husband's automobile accident were to be assumed by the law firm of Corboy and Demetrio.

On August 21, 1986, the Parkhurst firm filed a claim against the guardianship estate asking the court for reasonable attorney fees for the legal services it had rendered to the estate. The claim was later assigned to the claimant. He filed a supplement to the original claim and asked the court to award a *quantum meruit* fee of $50,000.

Even though the underlying action arising from the automobile accident was not adjudicated or settled, a hearing was nonetheless held on the fee claim in the circuit court of Peoria County. After hearing evidence and testimony as to the legal services rendered to the estate, the court awarded the claimant a *quantum meruit* fee of $36,000. The claim was ordered to be paid from the assets of the guardianship estate. Moreover, the court retained jurisdiction for the purpose of determining whether the claimant would be entitled to additional fees arising from any future recovery by the ward's employer under its compensation lien as provided for in the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)).

The first issue presented for review is whether a discharged attorney's cause of action for a *quantum meruit* fee accrues prior to the resolution of his former client's lawsuit. In Illinois, a client may terminate the services of his attorney at any time with or without cause. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 227-28.) A "client's right to discharge his attorney at will is not a breach of contract but a term of the contract im-

plied by law because of the special relationship between attorney and client and that it would be anomalous and unjust to hold a client liable in damages for exercising that implied right." *Rhoades*, 78 Ill. 2d at 229-30.

In *Rhoades*, an individual entered into a contingent-fee agreement with a law firm and, on the next day, discharged the firm. After the former client agreed to settle his claim, the discharged firm brought an action to recover the full contingent fee under the attorneys lien statute. The court held that an attorney who enters into a contingent-fee agreement with a client and is discharged without cause "is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge." *Rhoades*, 78 Ill. 2d at 230.

The court's holding was grounded on the public policy concern that if the firm could recover its full contract fee, a client's right to discharge his attorney would be meaningless since, even though he had discharged his attorney, his financial responsibility to his former attorney would be unchanged. (*Rhoades*, 78 Ill. 2d at 229.) In so holding, the court agreed with the reasoning of the California Supreme Court in *Fracasse v. Brent* (1972), 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385, wherein the court reasoned that a client has an implied contract right to discharge his attorney.

The instant case is distinguishable from *Rhoades* because in that case the former client had already agreed to a settlement at the time the attorney filed his fee claim. Further, the court was not presented with the issue of whether a discharged attorney could bring an action for fees prior to the adjudication or settlement of his former client's lawsuit. Whereas in the instant case, the guardian has yet to recover on her claims arising out of her husband's accident. Therefore, whether the discharged attorney can recover under such circumstances is a matter of first impression for this court.

The highest courts of other States have addressed the issue with mixed results. Some States have held that an attorney's cause of action to recover compensation for services rendered does not accrue until the occurrence of the stated contingency. *Fracasse*, 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385; *Rosenberg v. Levin* (Fla. 1982), 409 So. 2d 1016; *Plaza Shoe Store, Inc. v. Hermel, Inc.* (Mo. 1982), 636 S.W.2d 53; *First National Bank & Trust Co. v. Bassett* (1938), 183 Okla. 592, 83 P.2d 837.

This view has been adopted for some of the following reasons: (1) the result obtained by the second attorney is an important factor to be considered in determining the discharged attorney's fee (*Fracasse*, 6 Cal. 3d at 792, 494 P.2d at 14, 100 Cal. Rptr. at 390); (2) clients may have limited financial resources and it would be overly burdensome to require them to pay a fee if there was no recovery (*Fracasse*, 6 Cal. 3d at 792, 494 P.2d at 14, 100 Cal. Rptr. at 390); (3) the public policy of allowing clients to freely discharge their attorneys is furthered (*Rosenberg*, 409 So. 2d at 1022; *Plaza Shoe Store, Inc.*, 636 S.W.2d at 60); (4) confidence in the legal profession is promoted (*Plaza Shoe Store, Inc.*, 636 S.W.2d at 60); (5) any possible injustice to the attorney is avoided because a judgment could be worthless (*Bassett*, 183 Okla. at 595, 83 P.2d at 840); and (6) deferring the cause of action does not harm the attorney since he would not have recovered a fee under the contract until the occurrence of the contingency. *Rosenberg*, 409 So. 2d at 1022.

On the other hand, other States have held that an attorney can bring a cause of action for the reasonable value of his services immediately after the client terminates the contingent-fee contract. (*Booker v. Midpac Lumber Co.* (1982), 65 Haw. 166, 649 P.2d 376; *In re Tillman* (1932), 259 N.Y. 133, 181 N.E. 75.) The rationale behind this so-called contract approach was best articulated in the New York case. First, the client cannot

make the attorney's recovery dependent upon a contract term when the client has terminated the contract. The contract no longer governs their relationship. Second, the value of the first attorney's services cannot be measured by the result obtained by another. (*Tillman*, 259 N.Y. at 135, 181 N.E. at 75-76.) We have considered the rationale supporting each approach and hold that an attorney's cause of action for a *quantum meruit* fee accrues immediately after discharge.

We agree with the contract approach for the following reasons. First, "[a] contingent fee contract by definition is one that provides that a fee is to be paid to the attorney for his services only in case he wins, that is, a fee which is made to depend upon the success or failure to enforce a supposed right, and which fee is generally paid out of the recovery for the client." (*Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 78.) However, when a client terminates a contingent-fee contract, the contract ceases to exist between the parties thereto and the contingency term, whether the attorney wins, is no longer operative. A client cannot terminate the agreement and then resurrect the contingency term when the discharged attorney files a fee claim. "Either [the contract] wholly stands or totally falls." *Tillman*, 259 N.Y. at 135, 181 N.E. at 75.

Second, *quantum meruit* is based on the implied promise of a recipient of services to pay for those services which are of value to him. (*Ashton v. County of Cook* (1943), 384 Ill. 287, 301.) The recipient would be unjustly enriched if he were able to retain the services without paying for them. (*Romanek-Golub & Co. v. Anvan Hotel Corp.* (1988), 168 Ill. App. 3d 1031, 1041; *Van C. Argiris & Co. v. FMC Corp.* (1986), 144 Ill. App. 3d 750, 753; *Nardi & Co. v. Allabastro* (1974), 20 Ill. App. 3d 323, 327.) The claimant's recovery here should not be linked to a contract contingency when his recovery is not

based upon the contract, but upon *quantum meruit*. *E.g., Bunge v. Downers Grove Sanitary District* (1934), 356 Ill. 531, 537 (municipality cannot avoid payment based upon contingent nature of a contract where municipality repudiated the contract and recovery is premised upon *quantum meruit* for services rendered).

Third, this court believes that the outcome of the litigation is not an indispensable element that must be considered in calculating the value of an attorney's services. One of the factors to be considered in measuring the value of the services received is the benefits that have resulted to the client from the attorney's representation. (*Mireles v. Indiana Harbor Belt R.R. Corp.* (1987), 154 Ill. App. 3d 547, 551.) However, this factor can be measured by looking to the benefits the client has received during the period in which the attorney was employed. In *Tillman*, the New York Court of Appeals aptly stated:

> "The value of one attorney's services is not measured by the result attained by another. This one did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar. A successor may be able to obtain far heavier judgments than the efforts of the original attorney could secure, or, on the other hand, inferior equipment of a different lawyer might render futile an attempt to prove damage to the client." *Tillman*, 259 N.Y. at 135-36, 181 N.E. at 76.

Fourth, a client's right to discharge his attorney will not be made meaningless under this approach. After the attorney has been discharged, the former client will not be liable for the entire contract fee. Instead, the former client will only be liable for the reasonable value of the services received during the attorney's period of employment. In some cases, it is possible for someone to receive services and yet not be enriched in a tangible way at all. D. Dobbs, Handbook on the Law of Remedies §4.2, at 237 (1st ed. 1973). See *Herbert W. Jaeger & As-*

*sociates v. Slovak American Charitable Association*
(1987), 156 Ill. App. 3d 106, 111-12 (partial construction
of a rest home did not increase the value of the property,
but resulted in a decline in the sale price of the property
to compensate the purchasers for its removal).

Some clients, particularly those of limited means,
may be less inclined to discharge their attorneys know-
ing they are subject to liability for an attorney's *quan-
tum meruit* fee. It should be noted that contingent-fee
contracts are not exclusively entered into by the poor.
The use of contingent-fee contracts is more an aspect of
the litigation involved than the financial condition of the
client. Note, *Fracasse v. Brent: Contingent Fee Compen-
sation for an Attorney Discharged Without Cause—A
Right or a Mere Possibility?*, 9 Cal. W.L. Rev. 355, 364
(1973).

The second issue presented for review is whether a
discharged attorney can recover his fee from the work-
ers' compensation benefits paid to the estate. Section 21
of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.21) pro-
vides in pertinent part as follows:

> "No payment, claim, award or decision under this Act
> shall be assignable or subject to any lien, attachment or
> garnishment, or be held liable in any way for any lien,
> debt, penalty or damages ***."

The guardian maintains that the appellate court deci-
sion in the instant case is contrary to the above section
because the court held that an attorney may prosecute
his claim for fees "where a ready source of payment ex-
ists." (188 Ill. App. 3d at 329.) Although the court did
not define this source of payment, the guardian contends
that the source of payment referred to by the court was
the ward's weekly workers' compensation benefits. Re-
gardless of the source of payment referred to above, the
trial court order indicated that the fee for legal services
due the claimant was to be paid from the "assets of the

guardianship estate" and the ward's workers' compensation payments are clearly an asset of the estate.

The primary rule of statutory construction is to give effect to the intent of the legislature. As a starting point, a court should look to the language of the statute. (*People v. Chandler* (1989), 129 Ill. 2d 233, 253.) All undefined words used within a statute "must be given their ordinary and popularly understood meanings [citations]." (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366.) When construing a statute, a court should additionally consider the purposes to be achieved by the law. *Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 104.

The pertinent part of section 21 provides that workers' compensation benefits paid under the Act shall not be liable for any "debt." The word "debt" is not defined in the Act. A debt is a certain sum of money owing from one person to another. (Black's Law Dictionary 363 (5th ed. 1979).) By virtue of the trial court judgment in the instant case, the guardianship estate owes the claimant $36,000 for legal services it has received. Therefore, we consider this sum of money to be a debt within the meaning of the Act and the claimant should not be permitted to recover his judgment against the workers' compensation benefits paid to the estate.

The third issue presented for review is whether the trial court abused its discretion in awarding $36,000 in fees to the claimant. The guardian maintains that the court improperly awarded fees based upon vague estimates by the claimant as to the amount of time he expended during the course of his representation of the guardian. The claimant believes that the fee award was proper since he proved the nature and extent of his services at trial.

The burden of proof is on the attorney to establish the value of his services. (*McHugh v. Olsen* (1989), 189 Ill. App. 3d 508, 514.) A trial court has broad discretion-

ary powers in awarding attorney fees and its decision will not be reversed on appeal unless the court abused its discretion. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411.) To properly determine the reasonable value of an attorney's services, the following factors should be considered:

> "the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client." *Mireles*, 154 Ill. App. 3d at 551.

After the trial court valued the claimant's services at $36,000, the guardian requested a finding of fact as to how the court arrived at this figure and the court then stated:

> "THE COURT: The $36,000.00 is based on the testimony as to the amount of time which was spent and the nature of the service[s] *** rendered, that is, the attention that it was given, how it affected their claim, and the normal practice of law, what they had to do to set aside their time in order to accomplish what they did, the amount of travel involved, *** the difficulty of the case, the problems that were involved, the questions of the forum to be selected and the questions of identifying the proper defendant. All of those things were considered and were taken into consideration by the Court in fixing the amount of $36,000.00."

After carefully reviewing the record, we find that the trial court did not abuse its discretion in valuing the services rendered to the estate at $36,000. The claimant, who had been practicing in Peoria, Illinois, for approximately 35 to 40 years, testified that he performed the following services on behalf of the estate: he reviewed the accident report and investigated the scene of the accident; during the course of his investigation, he inter-

viewed two occurrence witnesses, an individual who lived near the accident scene, the proprietor of a towing service, and a State police officer; he took pictures of the car; he tracked down the garbage truck that was involved in the accident and arranged to have it photographed before it was reconditioned; and, although he had difficulty determining the owner of the truck, he eventually discovered the owner after making phone calls to the corporations division of the Secretary of State's office. Additionally, another member of the Parkhurst firm interviewed fire department and ambulance personnel, and the Parkhurst firm conducted legal research on the subjects of changing lanes and liability.

The claimant testified that the customary hourly rate in the community was $100. His minimum estimate as to the amount of time spent representing the guardian was 720 hours, two-thirds of which, or 500 hours, he estimated was expended on behalf of the estate. On cross-examination, the guardian attacked the reliability of the claimant's estimate. While we also question the claimant's estimate and the $36,000 award, the record does not establish that the court abused its discretion in determining the value of the claimant's services. This court cannot disturb an award because it would have awarded the claimant a different sum. *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 729.

The final issue presented for review is whether the Illinois Industrial Commission should decide whether the claimant is entitled to any portion of the 25% fee payable from any future recovery by the ward's employer through its workers' compensation lien. Under section 5(b) of the Act, an employee may bring an action against someone other than his employer to recover damages for his injury. Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).

Section 5(b) provides, in pertinent part, as follows:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative ***.

Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and *where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).

"The plain purpose of this provision, which was added to section 5(b) in 1957, was to require an employer to contribute to the necessary costs of the employee's recovery against a negligent third party where the employer is to receive reimbursement from the recovery for workmen's compensation payments made or to be made to the employee." (*Reno v. Maryland Casualty Co.* (1962), 27 Ill. 2d 245, 247.) To what degree an employee's attorney contributed to any reimbursement

of compensation paid by an employer is a question of fact. *Reno*, 27 Ill. 2d at 249.

Here the appellate court held this question of fact should be decided by the Industrial Commission since "[p]ayment of attorney fees for representation under the Workers' Compensation Act is to be determined by the Illinois Industrial Commission. (Ill. Rev. Stat. 1987, ch. 48, par. 138.16a.)" (188 Ill. App. 3d at 329-30.) Paragraph (J) of section 16a, relied upon by the appellate court, provides:

> "Any and all disputes regarding attorneys' fees, whether such disputes relate to which one or more attorneys represents the claimant or claimants or is entitled to the attorneys' fees, or a division of attorneys' fees where the claimant or claimants are or have been represented by more than one attorney, or any other disputes concerning attorneys' fees or contracts for attorneys' fees, shall be heard and determined by the Commission after reasonable notice to all interested parties and attorneys." Ill. Rev. Stat. 1987, ch. 48, par. 138.16a(J).

The primary rule of statutory construction is to give effect to the intent of the legislature. (*People v. Chandler* (1989), 129 Ill. 2d 233, 253.) Paragraph (A) of section 16a states that the legislative intent of section 16a is "to encourage settlement and prompt administrative handling of such claims and thereby reduce expenses to claimants for compensation under this Act." Ill. Rev. Stat. 1987, ch. 48, par. 138.16a(A).

However, the fee dispute in the instant case arises out of an employee's third-party claim, not a workers' compensation claim. After reading the statute and considering its legislative intent, it is apparent the Commission has jurisdiction over fee disputes relative to employee claims for compensation under the Act. However, the 25% attorney fee represents what the employer must pay as a result of an employee's third-party claim.

Therefore, the question of which attorney substantially contributed to a settlement or judgment of a third-party claim out of which the employer is reimbursed is a proper question for a trial court and not the Industrial Commission.

For all the above reasons, the judgment of the appellate court is affirmed in part and reversed in part and the judgment of the circuit court is affirmed.

*Appellate court affirmed in part
and reversed in part;
circuit court affirmed.*

JUSTICES BILANDIC and HEIPLE took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, concurring in part and dissenting in part:

The present plaintiff employed the attorney on a contingent-fee basis to represent her family's interests in proceedings stemming from an accident sustained by her husband. The plaintiff later discharged the attorney from that employment and retained substitute counsel to handle the case. In today's decision, the majority upholds the fee award of $36,000, determined on a *quantum meruit* basis. I would remand the cause for reconsideration of the discharged attorney's fee, and thus I do not join that portion of the majority opinion.

In *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, this court held that the recovery to be allowed to a discharged attorney in an action for a fee is not measured by the contract price but rather must be determined on a *quantum meruit* basis. Noting that a client has an absolute right to discharge counsel at any time, with or without cause, the court believed that the exercise of that right would be unnecessarily burdened if an attorney who was discharged before the completion

of his duties were allowed to recover as his fee the full contract price specified in the parties' fee agreement. The court explained:

> "To require the client to pay the discharged attorney the full contract fees would make the right to discharge even without cause largely meaningless since the client's contractual financial responsibility to the discharged attorney would be unchanged, unless the client could establish cause for discharge." *Rhoades*, 78 Ill. 2d at 229.

The court in *Rhoades* determined the measure of recovery applicable to the discharged attorney's fee action but did not decide when that cause of action accrues. As the majority opinion notes, courts allowing *quantum meruit* recovery are divided on the question. Although the case primarily relied on by *Rhoades* determined that the cause of action does not accrue until the occurrence of the originally anticipated contingency (see *Fracasse v. Brent* (1972), 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385), other courts applying the *quantum meruit* test have reached the opposite result, holding that the attorney's action accrues at the time of discharge (*e.g., Tillman v. Komar* (1932), 259 N.Y. 133, 181 N.E. 75).

I agree with the majority that the discharged attorney's action may accrue before the occurrence of the contingency contemplated in the parties' former agreement. As one court observed, the parties' original agreement, having been abrogated by the client, is no longer in force, and thus should not govern the discharged attorney's action to recover a fee. (*Tillman*, 259 N.Y. at 135, 181 N.E. at 75.) A contrary holding would necessarily mean that a discharged attorney who had been employed on a contingency basis must be denied all compensation if the contingency never occurs. But the original attorney "did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar" (*Tillman*, 259 N.Y. at

135, 181 N.E. at 76); the complete denial of compensation to an attorney who devoted much time and effort to an erstwhile client's case may be inequitable.

This does not mean, however, that the actual or probable outcome of the underlying litigation is entirely irrelevant in determining a proper fee on *quantum meruit* principles. An accurate assessment of the work performed by former counsel will normally require consideration of both the amount ultimately recovered in the plaintiff's action and the theory of liability on which the recovery was based. Often, these additional considerations will have a significant bearing on the proper determination of the discharged attorney's fee. And in a complex case, it may even be helpful to postpone that determination until after the underlying matter has been resolved.

In the present appeal, the majority expresses skepticism about the amount of the fee allowed the discharged attorney yet declines to disturb the award, stating that the amount awarded does not represent an abuse of discretion. (144 Ill. 2d at 45.) I would remand the present cause to the circuit court for reconsideration, so that explicit attention could be given to the additional circumstances I have noted. On remand, the trial court could then consider not only the discharged attorney's customary hourly rate and the time expended and work performed by him, but the other matters that are relevant to the determination, including the probable basis for liability and the size of the anticipated recovery. These additional criteria would afford the judge a more thorough basis on which to assess the value of the discharged attorney's work. And as I have indicated, in certain circumstances it may be appropriate to postpone this determination pending resolution of the underlying matter, even though the attorney's cause of action accrues at the time of discharge.