646 So.2d 776 (1994)
BARWICK, DILLIAN & LAMBERT, P.A., Appellant/Cross-Appellee,
v.
Carey L. EWING, Appellee/Cross-Appellant, and
Peter Gregory, Appellee.
No. 92-33.
District Court of Appeal of Florida, Third District.
November 23, 1994.
Rehearing Denied January 11, 1995.
Barwick, Dillian & Lambert, P.A., and Lyndall M. Lambert and Thomas E. Ice, Miami Shores, Hicks, Anderson & Blum, P.A., and Ralph O. Anderson, Miami, for appellant.
R. Stuart Huff, Coral Gables, Lawrence & Daniels and Adam H. Lawrence, Miami, for appellees.
Before BASKIN, JORGENSON and COPE, JJ.

ON MOTION FOR REHEARING
COPE, Judge.
On consideration of appellee Peter Gregory's motion for rehearing and certification, we withdraw the opinion dated January 25, 1994, and substitute the following opinion:
Barwick, Dillian & Lambert, P.A. ("the Barwick firm") appeals a final judgment in favor of Carey L. Ewing and Peter Gregory. Ewing cross-appeals the same judgment. We affirm in part and reverse in part.

I
The present litigation involves conflicting claims to share in a contingent fee in a personal injury case. The referring attorney, Gregory, is an attorney engaged in criminal, corporate, and family law practice. Among his clients were William and Marie Giannelli, whom he had represented from time to time on various matters. In January, 1986 Mrs. Giannelli was hospitalized for knee *777 surgery. During the hospitalization, she suffered serious brain damage and lapsed into a coma.
The Giannelli family consulted Gregory about the possibility that Marie Giannelli's injury had resulted from medical malpractice. Since Gregory's practice did not include medical malpractice, he undertook to have the case evaluated by law firms with that expertise. He contacted Ewing, who practiced in the medical malpractice field and was at that time an associate at the Barwick law firm.
In the fall of 1986 the Barwick firm agreed to take the Giannelli medical malpractice case on a contingency basis. Ewing met with William Giannelli and two relatives regarding the terms of the representation. Ewing testified that she outlined the Barwick firm's contingent fee arrangement. Ewing said she also obtained Giannelli's oral consent for Gregory to receive one-third of the contingent fee as a referral fee.[1]
On November 17, 1986, the Barwick firm and William Giannelli signed a written contingent fee agreement.[2] Gregory did not sign the agreement.
In March, 1987 the Barwick firm and Gregory entered into a letter agreement as follows:
Dear Peter [Gregory]:
Enclosed are copies of the Authority to Represent and Statement of Client's Rights which were previously signed with Mr. William Giannelli. We would like to set up by this letter the agreement between our office and yourself as to our fee arrangement. We would be agreeable to one-third referral fee to yourself, with two-thirds of the fee going to this office. If this is acceptable to you, please sign your acceptance at the bottom of the copy of this letter and return the copy to us in the enclosed envelope.
Gregory signed the acceptance line, which stated "The fee arrangement as described above between myself and Barwick & Dillian, P.A., is acceptable."
At the time the Barwick firm undertook the Giannelli case, the law firm had informed its associates that if an attorney brought in a case, that attorney would be entitled to thirty percent of the contingency fee received by the firm. Thus, under the firm's internal compensation arrangement, Ewing was entitled to a thirty percent share of any net contingent fee realized in the Giannelli case.[3]
After the representation began in November, 1986, Ewing was primarily responsible for the Giannelli file. She performed the pre-suit investigation and sent out the required pre-suit notices under the medical malpractice law. Gregory assisted in gathering information from Giannelli.
In July, 1987 the law firm dismissed Ewing for reasons unrelated to the present case. Giannelli made a specific decision to leave the medical malpractice suit with the Barwick firm.
In November, 1987 the law firm filed a personal injury action. In January, 1988 the Barwick firm wrote to Gregory on behalf of the client and discharged Gregory from the case. Gregory attempted to negotiate a reinstatement of the original agreement. Those negotiations eventually proved unsuccessful. In June, 1988 Gregory wrote to the Barwick firm denying that there was any cause to discharge him[4] and asserting that he would hold the Barwick firm to its contract.[5]
*778 In the meantime, in February, 1988 Marie Giannelli died. In June, 1988 the complaint was amended to assert a claim for wrongful death and redesignate William Giannelli as personal representative. In August, 1988 the law firm entered into a new contingent fee agreement with Giannelli in his capacity as personal representative. The new fee agreement made no reference to Gregory or Ewing.
The case proceeded without further participation by Gregory or Ewing. After protracted litigation and a jury trial, the law firm recovered $1,458,000 for the plaintiff, resulting in a contingency fee of $537,400.
Ewing and Gregory filed charging liens for their respective shares in the contingent fee. After bench trial, the court rendered judgment in Ewing's and Gregory's favor.[6] By its decision the court found that there was an oral agreement with Ewing, and awarded her thirty percent of the net contingent fee. Pursuant to the letter agreement, the court awarded Gregory one-third of the gross contingent fee.[7] The law firm has appealed.

II
As to the referring attorney, Gregory, the law firm's appeal is well taken. Gregory's award must be reversed because he was discharged without cause, which bars recovery in excess of quantum meruit under Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982).

A
We first note what is not at issue here. The parties agree that if the Barwick-Gregory letter agreement is not enforceable, it does not mean that Gregory forfeits entitlement to a fee. It means instead that Gregory would be entitled to compensation for work performed, based on quantum meruit. See Salter v. St. Jean, 170 So.2d 94, 95-96 (Fla. 3d DCA 1964). See generally Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947 (Fla. 4th DCA 1993), review denied, No. 83,120 (Fla. May 5, 1994).[8] In the present case, however, Gregory elected not to make a quantum meruit claim.

B
In Rosenberg v. Levin, the court said:
[w]e hold that an attorney employed under a valid [contingent fee] contract who is discharged without cause before the contingency has occurred or before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee.
409 So.2d 1016, 1021.
In the present case Gregory had an agreement to share in a referral fee in a contingency case. The client later discharged Gregory prior to the occurrence of the contingency. Under Rosenberg, Gregory was limited to recovery in quantum meruit.
Gregory asserts that he was never discharged, and that the Rosenberg rule therefore does not apply. We read the record in the light most favorable to Gregory as the prevailing party in the trial court. However, even when read in that light, we conclude that Gregory was discharged without cause.[9] *779 Since Rosenberg applies where there is a discharge without cause, Gregory was only entitled to recover quantum meruit for work actually performed. Gregory made no quantum meruit claim. The judgment for Gregory is reversed.[10]

III
The law firm argues that the same rules which bar Gregory's recovery also bar Ewing's recovery. We disagree.
In 1986 the Giannelli case was referred to Ewing while Ewing was an associate at the Barwick firm. Under the firm's compensation policy, Ewing was deemed to be the originating attorney and, as a matter of internal compensation agreement, Ewing became entitled to thirty percent of the law firm's fee.
The following year, Ewing left the firm. Giannelli elected to have the Barwick firm prosecute the case. Ewing had no further involvement in the litigation.
The law firm argues that Ewing's thirty percent claim amounts to a division of fee, because she was no longer at the Barwick firm when the contingent fee was paid. The law firm contends that the requirements for fee division have not been satisfied because she is not a party to any post-departure written agreement with Giannelli. The firm urges that Ewing's recovery must be reversed.
The contingent fee agreement was executed by the Barwick firm and the client in 1986. At that time the Code of Professional Responsibility was in effect. Under Disciplinary Rule 2-107(A), specific formalities were required if a lawyer divided a fee "with another lawyer who is not a partner in or associate of his law firm or law office."
By its terms Disciplinary Rule 2-107(A), however, did not apply to internal fee allocation among lawyers within a single law firm. In this case the contingent fee agreement had been executed between the client and the Barwick firm. The agreement covered the entire firm. There was no requirement that each individual lawyer within the firm execute separate agreements with the client.[11]
At the time Ewing left the Barwick firm, she had performed all of the steps necessary to qualify for the thirty percent share. Her performance had been accomplished while she was covered by the firm's contingency agreement with Giannelli. It is our view that after she departed, Ewing remained entitled to the share she had already earned. This was a matter of the internal compensation arrangements between Ewing and the Barwick firm. Where, as here, Ewing's sole claim is for services rendered at the Barwick firm, we do not believe that a new, post-departure set of agreements needed to be entered in order for Ewing to assert her claim.
The trial court's order is affirmed insofar as it determined that Ewing is entitled to her *780 thirty percent share. However, because of the reversal of the judgment with respect to Gregory, the law firm's share of the fee will increase. Accordingly, the judgment as to Ewing is reversed as to the amount and remanded for recalculation of her share.

IV
We find no merit in the remaining point on appeal. As to the cross-appeal, there is substantial competent evidence supporting the method of calculation of Ewing's share.
The final judgment is reversed with respect to Gregory and remanded with directions to enter judgment for Barwick, Dillian & Lambert, P.A. The final judgment in favor of Ewing is affirmed on liability, but reversed and remanded to recalculate the amount owed to Ewing.
Affirmed in part, reversed in part, and remanded with directions.
NOTES
[1] Gregory was not present at this meeting.
[2] Ewing signed on behalf of the Barwick firm.
[3] The evidence was conflicting over the question whether the policy was for 30% or 1/3, and whether the promise was for a share in the net or gross fee. The trial court found the amount was 30% of the firm's net fee. The firm conceded the existence of the announced 30% policy, but claimed that the policy did not apply where a referral fee was paid to an outside attorney. After hearing evidence of the firm's practice in this regard, the trial court rejected this defense.
[4] The January, 1988 letter of discharge asserted that Gregory had been unresponsive to requests for assistance, a charge Gregory denied.
[5] Gregory's letter then added, "As to needing my assistance in this case ... that help might be most advisable. However, prior to any such assistance, we would have to renegotiate our contract, increasing my fee." (Emphasis added).

When writing this demand to increase his share above one-third, Gregory overlooked the fact that for contracts entered into after January 1, 1988, a lawyer in Gregory's position was limited to "a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive." R. Regulating Fla. Bar 4-1.5(F)(4)(d) (1988); see The Florida Bar re Amendments to Rules Regulating The Florida Bar, 519 So.2d 971, 973 (Fla. 1987).
[6] The trial court did not enter specific findings of fact.
[7] Gregory's June, 1988 letter, see supra note 5, could be read as a repudiation of contract. We do not reach that issue and instead treat Gregory as having been discharged without cause.
[8] Forfeiture of fee has been imposed in some circumstances not applicable here. See Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775 (Fla. 3d DCA), review denied, 492 So.2d 1334 (Fla. 1986); see also Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d at 950-55.
[9] The Barwick firm sent Gregory a letter explicitly discharging him in January, 1988. It recited that this was done for cause and with the express concurrence of the client, Giannelli. Thereafter there were discussions between Gregory and the Barwick firm about reinstating him to the case under the earlier agreement. Gregory believed that the Barwick firm had agreed to do so. On a subsequent social occasion Giannelli's son-in-law expressed regret to Gregory that Gregory no longer had any involvement in the case. The son-in-law indicated his information about Gregory's exclusion from the case was derived from Giannelli himself or possibly the Barwick firm. In the meantime Gregory had had no further contact with the case or the Barwick firm. As a result of the conversation with the son-in-law, Gregory sent his June, 1988 letter responding to the January, 1988 letter of discharge. See supra notes 5, 7. In it Gregory disputed that there was any cause to discharge him. He protested the "unilateral abrogation" of the contract.

In August, 1988 Giannelli as personal representative entered into a new fee agreement with the Barwick firm which explicitly cancelled and superseded the previous agreement. It provided no role for Gregory.
At trial the Barwick firm reiterated that Gregory was discharged for cause. Gregory disputed that there was any ground to discharge him. Since Gregory was the prevailing party below, the trial court necessarily concluded that there was no cause to discharge Gregory.
However, the fact remains that Gregory was discharged in 1988, albeit that the discharge was without cause. We see no view of the evidence which would support Gregory's argument that he was never discharged at all.
[10] We do not reach the Barwick firm's alternative argument that Gregory's fee division claim should be denied for noncompliance with the Code of Professional Responsibility, the Rules of Professional Conduct, and subsection 768.595(4), Florida Statutes (1985), recodified as subsection 766.109(4), Florida Statutes (Supp. 1988), deleted as expired, Ch. 92-173, § 47, Laws of Fla.
[11] As it happened in this particular case, Ewing executed the contingent fee agreement with the client on behalf of the firm.