# Third District Court of Appeal
## State of Florida

Opinion filed April 22, 2026.
Not final until disposition of timely filed motion for rehearing.

————————————

Nos. 3D24-1399; 3D24-1400; 3D24-1402
Lower Tribunal No. 16-19142-CA-01

————————————

## Andrea Virgin, et al.,
Appellants,

vs.

## Ana M. Frexes,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Podhurst Orseck, P.A., and Stephen F. Rosenthal, and Christina H. Martinez, for appellants.

Zarco Einhorn Salkowski, P.A., and Robert Zarco and Brenda Phang; The Ferraro Law Firm, P.A., and Leslie B. Rothenberg, for appellee.

Before FERNANDEZ, GORDO[1] and GOODEN, JJ.

---

[1] Did not participate in the oral argument.

GOODEN, J.

This appeal examines the tension between a client's right to discharge counsel and a referral attorney's right to be paid under a signed representation agreement. To resolve this tension, we must determine two key issues: first, whether a client possesses the authority to discharge a referral attorney; and if so, the measure of compensation owed to the referral attorney should such a discharge occur. We reverse and remand for further proceedings consistent with this opinion.

## I.

On November 10, 2015, PEBB Enterprises chartered an Execuflight plane for its employees. Tragically, the plane crashed into an apartment building while attempting to land in Akron, Ohio. Along with seven co-workers, Thomas Jay Virgin died.

His widow, Appellant Andrea Virgin, turned to her aunt—attorney and Appellee Ana Frexes—to help navigate the legal landscape. But Frexes' practice focuses on worker's compensation. So Frexes referred her to Appellant Podhurst Orseck, P.A., which handles wrongful death and aviation accident claims and litigation.

After meeting with representatives from the firm, Virgin retained Podhurst to represent her on a contingency basis.[2]  Virgin, Podhurst, and Frexes all signed the representation agreement.[3]  There is no dispute that this agreement complied with Rule Regulating the Florida Bar 4-1.5(g).

The scope of that agreement was for Podhurst to represent Virgin in her "claim for damages against Execuflight, Inc., or any other persons, firms or corporations liable, resulting from an air crash that occurred on the 10th day of November, 2015."  It further provided:

> Podhurst Orseck, P.A., will participate in the fees set forth above, and Ana M. Frexes & Associates, P.A. will be responsible and available to the client for consultation, will participate and assist in preparation of the case, and will bear joint responsibility to the client, for its processing, up to final conclusion together with Podhurst Orseck, P.A.  However, Podhurst Orseck, P.A. will be lead trial and appellate counsel.
>
> On the basis of work performed in accordance with the Canon of Ethics, and depending upon performance of services as anticipated under this agreement, Podhurst Orseck, P.A., will share in the fees derived to the extent of 75% and Ana M. Frexes & Associates, P.A. to the extent of 25%.

---

[2] Podhurst also represented families of other deceased PEBB employees.  It obtained Virgin's informed consent to do so.

[3] A lawyer from Podhurst testified that, in his experience handling thousands of aviation wrongful death cases, a referring family member usually waives the referral fee to pass the resulting discount on to their grieving relative.

3

But despite the terms of the agreement and without the knowledge of Podhurst, Frexes performed other legal work related to Thomas Jay's death. For instance, Frexes litigated a worker's compensation claim that settled for $150,000.00, resulting in the execution of a release. She also litigated a disability case that secured an additional $14,000.00. She worked on the probate case and resolved a red-light ticket Thomas Jay received posthumously. And she convinced a creditor to drop its claim. While Virgin offered to pay Frexes, Frexes declined payment. Frexes considered it to be legal work done under the agreement.[4]

In October 2016, Podhurst filed the wrongful death suit. It quickly negotiated a global settlement with some defendants, including Execuflight. From that settlement, Frexes received a referral fee of $309,645.00.

Meanwhile, Virgin felt misled and upset. In an email to Frexes, she claimed she first discovered the referral fee from the closing statement. Frexes, for her part, maintains she disclosed the fee on several occasions, including when the initial agreement was executed. Citing fairness, Virgin requested that Frexes split the fee with Virgin's mother. Frexes refused, explaining sharing a fee with a nonlawyer constitutes a violation of the Rules

---

[4] At oral argument, Frexes conceded that she performed work beyond the scope of the contract.

4

Regulating the Florida Bar. Thereafter, the relationship grew "cold and distant."

At that time, several claims remained pending in the lawsuit. Podhurst continued to actively litigate these claims. Frexes continued to serve as a referral attorney.

In the summer of 2018, Virgin started exploring hiring another attorney—one who focuses on this area of law—to protect her interests and to work with Podhurst. She eventually hired Appellant Michael Olin. On January 28, 2019, Virgin emailed Frexes expressing a desire to terminate the relationship and hire co-counsel. Frexes responded that she is not co-counsel, but a referring attorney. As the referring attorney, Frexes maintained she could not be discharged. She reiterated that she is "committed to [Virgin] in [her] role as referring attorney and personal counsel in any matter." She warned that hiring additional counsel would come at a cost to Virgin. Virgin responded that Frexes was being replaced by Olin.

Despite Virgin's intent to terminate the relationship, Frexes contends the representation continued, citing the absence of an express release of her joint responsibility. Yet Frexes neither sought clarification nor asked Virgin for an express release. Instead, Frexes emailed Podhurst and Olin stating that she is part of the legal team and is "ready, willing and able to assist and

5

serve in any legal capacity." Frexes also texted Podhurst asserting, "I am not waiving my referral fee."

In turn, Olin sent Frexes a letter reiterating that Virgin had discharged her as an attorney and directed her to stop contacting Virgin. He requested Frexes to send documentation supporting "any new compensable time or reimbursable costs [she had incurred] since the conclusion of the prior settlement." Rather than doing so, Frexes filed a notice of charging lien.[5] The notice maintained that Frexes was contractually entitled to a fee "calculated as a percentage of any funds recovered" from any future settlement.

Meanwhile, Podhurst and Olin continued to vigorously litigate the case against the remaining defendants. Towards the end of 2019, their efforts resulted in a favorable settlement. Podhurst disbursed the settlement

---

[5] A "charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It serves to protect the rights of the attorney." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983). It "attaches to the tangible fruits of the services." L. Off. of Michael B. Brehne, P.A. v. Porter L. Firm, LLC, 268 So. 3d 854, 855 (Fla. 5th DCA 2019). Its use is well-entrenched in Florida law. See Carter v. Bennett, 6 Fla. 214, 258 (1855); Randall v. Archer, 5 Fla. 438, 444 (Fla. 1854).

proceeds, except for $25,000.00 that it held in trust for the charging lien. Olin was paid $140,000.00, which was 25% of recovered attorneys' fees.

For the next several years, the parties litigated the charging lien. During this time, Frexes maintained that she was entitled to the contractual fee and that the facts did not allow for application of quantum meruit. Frexes finally produced her time records in 2021. These records documented over 360 hours from the date of the airplane crash, at $400 an hour, totaling $144,099. Frexes kept some of her time contemporaneously, but had to reconstruct other entries.

Shortly thereafter, Virgin moved for partial summary judgment asserting that Frexes was not entitled to the contractual fee and that she was limited to quantum meruit. The trial court denied the motion, finding there was a genuine dispute of material fact.

In 2024, the trial court conducted a four-day bench trial. Frexes argued that she was entitled to the contractual fee of $140,000.00; but, if the court found she was co-counsel, she was entitled to $144,099.00 under the theory of quantum meruit. Virgin, Podhurst, and Olin contended that since Frexes was discharged before the final settlement and the occurrence of that contingency, she was not entitled to any fee. Alternatively, they argued that, at most, Frexes could receive $8,120.00 in quantum meruit. This amount

7

was for the time incurred between the first settlement and discharge, and that fell within the scope of the representation agreement.

The trial court ultimately entered final judgment awarding $140,000.00 to Frexes—the amount equal to the 25% referral fee. It held Virgin, Podhurst, and Olin jointly and severally liable for that amount. Alternatively, it found that Frexes was entitled to the same amount of $140,000.00 under a theory of quantum meruit. In doing so, the trial court made several legal rulings:

- Quantum meruit only applies where the referring attorney has been suspended or disbarred during the representation and cannot fulfill his or her obligations under the contract.

- A referral attorney cannot be discharged under Florida law.

- Frexes was discharged without proper cause.

- Virgin's unilateral discharge created a legal impossibility of Frexes' performance of the contract, entitling Frexes to the contractual fee.

Virgin, Podhurst, and Olin each appealed. Having heard these matters together at oral argument, we now issue this consolidated opinion.

## II.

This charging lien was determined after a four-day bench trial. Judgments rendered after a bench trial are subject to various standards of

8

review. At the heart of the dispute is the trial court's legal conclusions. See Morales v. Morales, 388 So. 3d 901, 903 n.3 (Fla. 3d DCA 2024). "Applications of the law—legal conclusions—are reviewed de novo." Lopez-Brignoni v. Fla. Dep't of Agric. & Consumer Servs., 314 So. 3d 318, 323 (Fla. 3d DCA 2020). See also Trump Endeavor 12 LLC v. Fernich, Inc., 216 So. 3d 704, 707 (Fla. 3d DCA 2017) ("To the extent that we are reviewing the trial court's application of the law to its factual determinations, our standard of review is de novo."). To the extent the trial court's factual findings are at issue, we review those for competent, substantial evidence. Lopez-Brignoni, 314 So. 3d at 323.

## III.

To resolve the matter before us, we first must examine whether a client can discharge a referral attorney. And, if so, whether Virgin properly discharged Frexes. In communications with Virgin and the others, Frexes contended that, as a referral attorney, she could not be discharged. The trial court agreed. On appeal, Frexes softened that position, asserting that the referring attorney can be terminated if he or she is expressly relieved of joint responsibility; but that Virgin did not expressly relieve her of that obligation. Virgin, Podhurst, and Olin maintain that a referral attorney relationship can be severed and Frexes was discharged here.

9

**A.**

The attorney-client relationship is a consensual relationship involving "great personal and professional integrity and responsibility on the part of the lawyer and an equal confidence and trust on the part of the client." Fisher v. State, 248 So. 2d 479, 484 (Fla. 1971). "Such relationship requires absolute confidence in the lawyer by the client and an equal confidence in the client by his lawyer." Id. It demands an attorney to place the client's interests ahead of his or her own personal dealings and financial gain. Crigler v. State, Dep't of Transp., 535 So. 2d 329, 330 (Fla. 1st DCA 1988); Deal v. Migoski, 122 So. 2d 415, 417 (Fla. 3d DCA 1960).

"When this relationship breaks down, both the attorney and the client each have a right to dissolve the relationship." King & Spalding LLP v. Residences at the Bath Club Condo. Ass'n, Inc., 413 So. 3d 950, 952 (Fla. 3d DCA 2025). Indeed, a client can discharge his attorney—*with or without cause*—at any time. Harvey v. Rowe, 192 So. 878, 880 (Fla. 1940); Carey v. Town of Gulfport, 191 So. 45, 46 (Fla. 1939). "The right of a client to change his attorney at will is based on necessity, in view of both of the delicate and confidential relation between them and of the evil engendered by friction and distrust." U.S. Sav. Bank v. Pittman, 86 So. 567, 573 (Fla. 1920). See also Rosenberg v. Levin, 409 So. 2d 1016, 1021 (Fla. 1982)

10

("These considerations dictate that clients be given greater freedom to change legal representatives than might be tolerated in other employment relationships. We approve the philosophy that there is an overriding need to allow clients freedom to substitute attorneys without economic penalty as a means of accomplishing the broad objective of fostering public confidence in the legal profession.").

Frexes urges us to treat referring attorneys differently. Yet the Rules Regulating the Florida Bar do not distinguish between classes of attorneys— such as lead counsel or referral counsel—when defining the client's right to terminate. Instead, Rule 4-1.16 ("Declining or Terminating Representation") applies broadly to "lawyers." It provides: "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged[.]" R. Regulating Fla. Bar 4-1.16(a)(3). The Rules define a "lawyer" simply as "a person who is a member of The Florida Bar or otherwise authorized to practice in the state of Florida." R. Regulating Fla. Bar, ch. 4, Preamble, Terminology. And so, the client's power to discharge counsel is universal, applying to referral attorneys with the same force as it does to lead counsel.

This is further reinforced by Florida's framework for legal referrals. Florida does not follow a pure referral model where the lawyer receives a fee

11

simply for passing a case to another lawyer. Instead, the Rules Regulating the Florida Bar adopt a different model—one imposing ongoing obligations to the client. Rule 4-1.5(g) provides:

> Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
>
> (1) the division is in proportion to the services performed by each lawyer; or
>
> (2) by written agreement with the client:
>
> (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
>
> (B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.

R. Regulating Fla. Bar. 4-1.5(g). Rule 4-1.5(f)(4)(D) states:

> As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) must be on the following basis:
>
> (i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
>
> (ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% will be presumed to be clearly excessive.

R. Regulating Fla. Bar. 4-1.5(f)(4)(D)(i)–(ii).

At bottom, the referring lawyer will either recover based on the services they render or by agreement in which they accept a percentage in exchange for assuming joint responsibility. R. Regulating Fla. Bar. 4-1.5(g). Joint responsibility entails the obligations stated in Rule 4-5.1. See R. Regulating Fla. Bar. 4-1.5(g), Comment. The joint responsibility requirement is what transforms a referral attorney from a mere middleman into a full fiduciary of the client. It places the referral attorney on the same level as other attorneys working on the case. So it necessarily follows that a client can discharge them in the same manner.

Stated another way, if a referral attorney could not be discharged, they would have a "guaranteed" contract that supersedes the client's absolute right to choose their counsel. And this cannot be. It would restrict the client's freedom to choose their counsel and effectively be a penalty. See Fla. Bar v. Hollander, 607 So. 2d 412, 415 (Fla. 1992); Fla. Bar v. Doe, 550 So. 2d 1111, 1113 (Fla. 1989).

Accordingly, the trial court erred as a matter of law by ruling that a referral attorney cannot be discharged.[6] See Barwick, Dillian & Lambert,

_____

[6] We express no opinion on how the discharge of the referral attorney affects the existing contract with lead counsel, nor do we address whether the remaining parties should execute a new representation agreement.

P.A. v. Ewing, 646 So. 2d 776, 778 (Fla. 3d DCA 1994) (recognizing that a referral attorney can be discharged); Sohn v. Brockington, 371 So. 2d 1089, 1093 (Fla. 1st DCA 1979) ("The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered.").

**B.**

To discharge a referral attorney, Frexes maintains that the client must expressly waive or discharge that attorney from joint responsibility. But nothing in the Rules Regulating the Florida Bar or any other authority require such a release or waiver. See generally R. Regulating Fla. Bar. 4-1.16; Doe, 550 So. 2d at 1113 ("An attorney cannot exact a penalty for a right of discharge."). And one would not be required because "[a]fter discharge neither the attorney nor client is bound by the terms of the contract . . . ." Sohn, 371 So. 2d at 1094. See also Smith v. Parker, 508 So. 2d 1262, 1263 (Fla. 5th DCA 1987) ("That agreement terminated when he withdrew and Smith, absent some further agreement or modification, had no further duty

14

or obligation to Beshara. The contract was at an end."). While she remained jointly responsible for actions *before* discharge, Frexes was not jointly liable for any action *after* discharge.

Conversely, terminating the relationship is straightforward: a client simply needs to provide notice that he or she is discharging the attorney's services. It is best practice to do so in writing. No magic words are required. It can be as simple as, "You are fired."[7]

On January 28, 2019, Virgin emailed Frexes expressing the desire to terminate the relationship. They exchanged several emails. Virgin told Frexes that Olin was replacing her. On our review of the record, we find that these emails were sufficient to discharge Frexes' employ. Nothing further was necessary. As of this date, Frexes was no longer Virgin's counsel.

If she questioned or doubted the discharge, Frexes should have sought clarification of the relationship—rather than doubling down on her referral fee. As the lawyer, that burden fell on her. See R. Regulating Fla. Bar 4-1.3, Comment ("Doubt about whether a client-lawyer relationship still exists

---

[7] A lawyer may still need to comply with Rule 4-1.16. See R. Regulating Fla. Bar 4-1.16(c) ("A lawyer must comply with applicable law requiring notice or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.").

should be clarified by the lawyer, preferably in writing . . . .").  This includes getting an express release of any joint liability.

**IV.**

Even though there is a right to discharge a referral attorney, this right is subject to liability for payment for the attorney's services.  <u>See</u> R. Regulating Fla. Bar 4-1.5(i) ("If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done."); R. Regulating Fla. Bar 4-1.16, Comment ("A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services."); R. Regulating Fla. Bar 4-5.8, Comment ("While clients have the right to choose counsel, that choice may implicate obligations such as a requirement to pay for legal services previously rendered and costs expended in connection with the representation as well as a reasonable fee for copying the client's file.").  We must determine the proper basis for that compensation here.

The trial court awarded Frexes the contractual fee of 25% of the total fee recovery—$144,000.00.  In doing so, the trial court reasoned that quantum meruit only applies where the lawyer has been suspended or disbarred during representation and cannot fulfill his or her contractual

16

obligations. It further ruled that Virgin's actions created an impossibility for Frexes to fulfill her duties, entitling her to the contractual fee.

Alternatively, the trial court awarded quantum meruit in the same amount. This included time from the date of the airplane crash until the occurrence of the last contingency—well-after discharge. In its analysis, it focused mainly on the representation agreement.

We find both determinations legally erroneous for several reasons.

### A.     Contractual Fee

Florida distinguishes between the client discharging the lawyer and the lawyer discharging the client without cause before the contingency occurs. In the former situation, Florida adopted a modified quantum meruit rule. Rosenberg, 409 So. 2d at 1021. When an attorney is discharged without cause, he or she is entitled to recover reasonable value for services performed before discharge. Id. This quantum meruit is limited to the "maximum contract fee." Id. "This limitation is believed necessary to provide client freedom to substitute attorneys without economic penalty. Without such a limitation, a client's right to discharge an attorney may be illusory and the client may in effect be penalized for exercising a right." Id. at 1020. This "approach creates the best balance between the desirable right of the client

17

to discharge his attorney and the right of an attorney to reasonable compensation for his services." Id. at 1022.

In the latter situation, the attorney forfeits any fee whatsoever. Faro v. Romani, 641 So. 2d 69, 71 (Fla. 1994). A limited exception exists where there is justifiable cause for withdrawal based on a finding that the client's conduct either rendered the attorney's performance legally impossible, or would result in the attorney violating an ethical rule. Id. See also Mineo Salcedo L. Firm, P.A. v. Cesard, 333 So. 3d 222, 228 (Fla. 4th DCA 2022) ("When an attorney voluntarily withdraws from representation of a client before the contingency occurs, the attorney forfeits all rights to compensation unless the client's conduct makes the attorney's continued performance either legally impossible or would cause the attorney to violate an ethical rule, in which case the attorney may be entitled to a fee when the contingency occurs.").

In awarding Frexes the contractual fee of 25% of fee recovery, the trial court ruled that Virgin's conduct created an impossibility for Frexes to perform under the contract and the limited exception applied. But this ruling lacks legal and factual support. Indeed, Virgin discharged Frexes—not the other way around. The limited exception only applies in situations where the attorney withdraws from representation. Faro, 641 So. 2d at 71. Plus,

18

Virgin's action at issue is her discharge of Frexes—which she had an absolute right to do. Thus, the limited exception does not apply.

Because Virgin discharged Frexes and the limited exception does not apply, Frexes was only entitled to modified quantum meruit. She was not entitled to the contractual fee. See Barwick, Dillian & Lambert, P.A., 646 So. 2d at 778 (holding discharged referral attorney cannot recover the contractual fee, and is only entitled to quantum meruit).

### B. Modified Quantum Meruit

Turning to the quantum meruit analysis, the trial court alternatively ruled that quantum meruit supports its award. But the trial court did not meaningfully engage in the required analysis to determine that quantum meruit. It focused solely on the fee agreement. It disregarded the initial settlement, Frexes' discharge, that Frexes seeks to recover for work outside the scope of the representation agreement, and that some of the time for which she seeks compensation was spent pursuing her own recovery.

As a result, the trial court erred as a matter of law by failing to consider the totality of the circumstances. Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So. 2d 366, 369 (Fla. 1995). We reverse and remand for the trial court to perform the modified quantum meruit analysis. In its analysis, the trial court should consider the factors set forth by the

19

Florida Supreme Court. See Rosenberg, 409 So. 2d at 1022; Searcy, Denney, Scarola, Barnhart & Shipley, P.A., 652 So. 2d at 369. Its determination should not include any time incurred after Frexes' discharge on January 28, 2019,[8] and should not include any time incurred on matters outside the scope of the representation agreement. Rosenberg, 409 So. 2d at 1021.

## V.

The trial court erred in its legal reasoning and conclusions of law. In essence, its decision made Virgin's right to terminate illusory and enacted a penalty upon her for discharging Frexes' services. Rosenberg, 409 So. 2d

---

[8] Prohibiting recovery for time incurred after an attorney is discharged is logical. Rosenberg, 409 So. 2d at 1021. Following notification of discharge, the attorney's interests conflict with that of a client. Brasch v. Brasch, 109 So. 2d 584, 587 (Fla. 3d DCA 1959). The relationship must cease. See R. Regulating Fla. Bar 4-1.16(a)(3) ("[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged . . . ."). A lawyer or law firm generally cannot recover for reasonable services performed after a conflict arises. See Fla. Ethics Op. 89-1 (explaining a lawyer who refers a case because of a conflict cannot receive a referral fee as he cannot assume joint responsibility); Fla. Ethics Op. 73-2 (explaining law firm that referred a case due to conflict could only be paid reasonable value of services before conflict arose). Any action taken thereafter is without lawful authority and does not bind the client. Syna v. Lewen, 549 So. 2d 755, 756 (Fla. 3d DCA 1989); Brasch, 109 So. 2d at 587.

at 1020.  We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.